Argued and submitted August 13, reversed and remanded with instructions
October 7, 1998

# HILLYER'S MID-CITY FORD, INC.,
an Oregon corporation,
Hershberger Motors, Inc.,
an Oregon corporation, and
RMWG Investments, Inc.,
an Oregon corporation,
dba Miles Chevrolet,
*Petitioners,*

*v.*

# CITY OF WOODBURN,
*Respondent.*

(LUBA No. 97-220; CA A102597)

965 P2d 474

Wallace W. Lien argued the cause and filed the brief for petitioners.

N. Robert Shields argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioners are three separate entities that are engaged in automotive and related businesses. Each petitioner sought to install an on-premises commercial sign, of a size and configuration that the City of Woodburn's sign ordinance allows only for "integrated business centers." As required by the ordinance, petitioners filed sign permit applications with the city to authorize the signs. Insofar as the record, the parties' arguments, or LUBA's opinion shows, neither the city council nor any inferior city official or body made a final decision to grant or deny the applications. Instead, the city proceedings culminated in an interpretive ordinance by the council, in which it construed the sign ordinance and concluded that petitioners do not qualify as "integrated business centers" within its meaning. Petitioners appealed to LUBA from the council's adoption of the interpretive ordinance. LUBA affirmed, in a memorandum opinion. ORS 197.835(16). Petitioners seek our review. We hold that there was no final and appealable land use decision before LUBA over which it had jurisdiction under ORS 197.825.

At the outset, there is little agreement between the parties about what the city decided and, concomitantly, what was in a posture to be decided by LUBA or is in a posture to be decided by us now. Petitioners' notice of intent to appeal to LUBA describes the interpretive ordinance from which the appeal was taken as being "related to applications for sign permits filed by Petitioners." Petitioners maintain, among other things, that the city council's interpretive action amounted to a *de facto* denial of the permit applications. The city disagrees. It asserts that "[i]t is clear from the face" of the document being appealed that it constitutes "an interpretation of the Woodburn sign ordinance and did not address the denial of any sign application." The city does not suggest that petitioners prematurely pursued an appeal from an interlocutory order or that they failed to exhaust local remedies. Rather, the city's position appears to be that the interpretive ordinance *is* final for purposes of LUBA's review. Petitioners contend in one of their assignments to us that LUBA erred by

accepting the city's "position that it had not made any decision on Petitioners' sign application[s] but merely interpreted its sign ordinance."[1]

■■     Neither party asserts that there is a jurisdictional defect here. However, we are required to consider jurisdictional issues *sua sponte*. It might be tempting for us to accept petitioners' suggestion that the city council's interpretive ordinance should be treated as a *de facto* denial of the permit applications, if doing so would simply accomplish a recognition of substance over form. We are in no position to do that, however, because the city's argument here is very much to the effect that the interpretive ordinance was meant to say exactly what it does say and was not meant to say or decide anything else. Hence, the arguments presented to us, like the face of the ordinance itself, offer no basis for concluding that the substance and the form differ. We also lack the authority—at least in the absence of the city's concurrence—to assume equivalency between the decision that the city made and the *de facto* decision that petitioners assert inheres in it. Our function is to review land use decisions, not to make them. Moreover, we have no way of knowing, much less of postulating, that no additional considerations, particularly of a factual nature, might have entered into the city's deliberations or affected its disposition if it had ruled on the applications instead of limiting itself to an abstract interpretation of the ordinance.[2]

In sum, petitioners filed applications for sign permits pursuant to the city's sign ordinance, and the city made no final land use decision[3] disposing of the applications. Its

---

[1] LUBA's opinion *describes* the action under review as the "denial of [petitioners'] sign permit applications." However, that description is inaccurate.

[2] The city made a number of "findings of fact" in the interpretive ordinance. However, they are perfunctory and seemingly uncomprehensive in nature.

[3] ORS 197.015(10)(a)(A) defines "land use decision," *inter alia*, as:

"A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)  The goals;

"(ii)  A comprehensive plan provision;

"(iii)  A land use regulation; or

"(iv)  A new land use regulation * * *."

There is no question that a final action by the city approving or denying the applications would constitute a "land use decision." ORS 197.015(10)(b)(A) excepts from

failure to do so was contrary to state statutes under which it was required to take final action to approve or deny the applications. *See, e.g.,* ORS 227.160 to ORS 227.180. Correspondingly, there was no final land use decision approving or denying the applications that was—or could have been—before LUBA.

The only question that remains—or at least the only remaining question that has potential bearing on whether LUBA had jurisdiction—is whether the interpretive ordinance can qualify as a final "land use decision," despite the fact that it does not approve or deny petitioners' applications.

**3.** In *Medford Assembly of God v. City of Medford,* 297 Or 138, 681 P2d 790 (1984), *cert den* 474 US 1020 (1985), and related cases, the definition of "land use decision" in ORS 197.015(10)(a)(A) has been interpreted as sometimes including "declaratory rulings," in which a local government decides land use matters under circumstances where there is no immediate issue about the approval or denial of an actual application for a permit or use. In the *Medford* case itself, for example, the petitioner sought a declaratory interpretation that it was *not* required to obtain a conditional use permit in order to conduct a particular use.[4] Whatever else the appropriate limits on the so-called declaratory ruling process may be, however, it is clear that the process cannot properly be used to circumvent an applicant's right or a local government's duty to make a decision on an application for a permit

---

the definition decisions that are made under "standards which do not require interpretation or the exercise of policy or legal judgment." However, the relevant standards here obviously do require interpretation. *See Doughton v. Douglas County,* 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987). That fact is not changed by the city's choice to bifurcate the interpretation of the standards from any process leading to a decision on petitioners' permit applications.

[4] At oral argument, the city agreed that it has no procedure for declaratory rulings. *See Medford Assembly of God,* 297 Or at 140-41. Section 2.040 of the city's zoning ordinance contains a procedure for interpreting ordinance provisions of "doubtful" meaning in the course of the administration of the ordinance. However, Section 2.040 does not purport to supplant the eventual need for a decision granting or denying a pending application in those cases where an intervening interpretation of an ordinance provision is necessary. In effect, the city's interpretation provision does no more than mirror the normal decision making process, in which the meaning of legislative provisions is resolved in the course of ruling on applications to which the provisions relate. Section 2.040 lends no support to the notion that the city was obliged only to interpret the sign ordinance and was not required to rule on the applications at all.

or use when such an application *is* properly pending before the local government. *Weeks v. City of Tillamook*, 113 Or App 285, 289, 832 P2d 1246 (1992); *see also Recovery House VI v. City of Eugene*, 150 Or App 382, 946 P2d 342 (1997); *Owen Development Group, Inc. v. City of Gearhart*, 111 Or App 476, 826 P2d 1016 (1992).

■■　We conclude that the city's interpretive ordinance, insofar as it is arguably akin to a declaratory ruling, did not divest petitioners of their right to a city decision on their applications, nor did it divest the city of its obligation to make such a decision. Relatedly, we also conclude that the interpretive ordinance cannot serve as an independently appealable event. Under the circumstances here, the interpretation of the ordinance was simply an interlocutory component of the final decisions that were required to be, but were not, made. The city's act of interpretation was not a final land use decision in itself.

We are unaware of the reasons why the city as a decisionmaker did not make a final decision on the applications, or why the city as an advocate has so forcefully resisted any suggestion that what it did can be treated as the equivalent of such a decision. However, it is sufficient for us to know *what* the city did and did not do, and it is not particularly important that we know *why*—at least for now. It did not make a final land use decision.

Reversed and remanded with instructions to dismiss appeal.