Submitted on record and briefs February 7, affirmed May 8, 2003

Jim CAPE,
*Respondent,*

*v.*

CITY OF BEAVERTON,
*Petitioner.*

2002-102; A119986

68 P3d 261

Mark Pilliod filed the brief for petitioner.

Jim Cape filed the brief *pro se.*

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

DEITS, C. J.

**DEITS, C. J.**

The City of Beaverton seeks review of a Land Use Board of Appeals (LUBA) order remanding a city ordinance that annexes a 19.4-acre parcel of land on which a school is located and certain rights-of-way that connect the school to the city boundary. We affirm.

The basic facts are not in dispute. We take them from LUBA's opinion and from the city's ordinance and supporting documents. The annexation at issue here incorporates the property on which Meadow Park Middle School is located and certain county rights-of-way on SW Butner Road and SW Downing Street. The record before the city included a staff report stating that, following the annexation, the city would adopt a separate ordinance to change the existing county comprehensive plan and zoning map designations for the annexed properties to the city's comprehensive plan and zoning map designations that most closely approximate the density and other standards in the county's regulations. LUBA remanded the annexation ordinance because it agreed with petitioner below, Cape, that the city had failed to obtain the necessary consent from the county before annexing the SW Butner Road right-of-way.

In reaching its decision, LUBA rejected the city's motion to dismiss for lack of jurisdiction. Before this court, the city's first assignment of error challenges LUBA's conclusion that the annexation was within its jurisdiction because it was a "land use decision" as defined in ORS 197.015(10)(a)(A).

As LUBA correctly explained, it has jurisdiction only if the appealed decision satisfies either the significant impacts test established by *City of Pendleton v. Kerns*, 294 Or 126, 133-34, 653 P2d 992 (1982), or the statutory definition of a "land use decision," ORS 197.015(10)(a)(A). LUBA agreed with the city that the annexation did not qualify as a land use decision under the "significant impacts" test discussed in *City of Pendleton*. Therefore, the question becomes whether the city's decision is within the statutory definition of a "land use decision." A "land use decision" is defined in ORS 197.015(10)(a)(A) as

"[a] final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)     The goals;

"(ii)    A comprehensive plan provision;

"(iii)   A land use regulation; or

"(iv)    A new land use regulation[.]"

As noted above, LUBA held that the annexation was a land use decision as defined in ORS 197.015(10)(a)(A). LUBA first concluded that the city's action did not qualify as a land use decision under ORS 197.015(10)(a)(A)(ii) or (iii). It explained that it was, instead, an expedited annexation under ORS 222.125 and Metro Code (MC) 3.09.045. Under the Metro Code, the annexation was subject to MC 3.09.050(d)(3), which required the city to demonstrate that the annexation is consistent "with specific directly applicable standards or criteria for boundary changes contained in comprehensive land use plans and public facility plans[.]" LUBA then noted that the city found that "[t]here are no specific directly applicable standards or criteria for [annexations] in Beaverton's Comprehensive Plan or Public Facilities Plan and, therefore, this criterion is not applicable." *Cape v. City of Beaverton*, 43 Or LUBA 301, 309 (2002). As LUBA further explained, petitioners below did not assign error to that finding, nor did they identify any other city land use regulation that applies to the decision. Accordingly, LUBA concluded that, if no local plan or regulation applies to the adoption of the annexation ordinance, this is not a "land use decision" under ORS 197.015(10)(a)(A)(ii) or (iii). We agree with LUBA's conclusion on that point.

The critical issue in deciding if the city's decision here is a "land use decision" is whether the decision is a final decision concerning the application of *the goals* and, therefore, a land use decision under ORS 197.015(10)(a)(A)(i). In a well reasoned opinion, LUBA concluded that this decision *concerns the application of the goals*. LUBA began its analysis of this issue by noting that ORS 197.175(1) provides:

"Cities * * * shall exercise their planning and zoning responsibilities, including, but not limited to, a city * * *

boundary change which shall mean [among other things] the annexation of unincorporated territory by a city * * * *in accordance with [the statewide planning] goals[.]"

(Emphasis added.)

Generally, once a city's plan and land use regulations are acknowledged[1] as being in compliance with the goals, the goals are no longer directly applicable. As LUBA explained, however, the review of whether an annexation ordinance is in compliance with an acknowledged plan presents a more complicated question. LUBA then turned to a Land Conservation and Development Commission (LCDC) rule implementing ORS 197.175 that specifically addresses how the goals apply to annexation decisions. LUBA recited that the purpose of LCDC's rule on this subject is

> " 'to clarify existing goals and provide guidance to local governments and local government boundary commissions regarding annexations of land to cities under the goals. This rule specifies the satisfactory method of applying the Statewide Goals and Guidelines, during annexation proceedings.' "

*Cape*, 43 Or LUBA at 309 (quoting OAR 660-001-0300). LUBA then explained that OAR 660-001-0315 governs how the goals are to be considered when the annexation decision is *not* subject to an acknowledged plan. It concluded that, because both Washington County and the City of Beaverton have acknowledged plans, that rule would not apply here. Rather, the provisions of OAR 660-001-0310 apply. That rule provides:

> "A city annexation made in compliance with a comprehensive plan acknowledged pursuant to ORS 197.251(1) shall be considered by [LCDC] to have been made in accordance with the goals *unless the acknowledged comprehensive plan and implementing ordinances do not control the annexation.*"

OAR 660-001-0310 (emphasis added).

---

[1] An "acknowledged" comprehensive plan is one found by the Land Conservation and Development Commission (LCDC) to be in compliance with statewide land use planning goals. *See* ORS 197.015(1); ORS 197.251.

After discussing the above statutes and rules, LUBA concluded that city annexation decisions, such as the decision at issue here, are land use decisions subject to its review. It explained:

> "Either (1) the city's comprehensive plan or land use regulations have criteria that govern the annexation, in which case the annexation decision is a land use decision under ORS 197.015(10)(a)(A)(ii) or (iii), or (2) the comprehensive plan and land use regulations do not have criteria that govern annexation decisions, in which case under ORS 197.175(1) and OAR 660-001-0310 the statewide planning goals continue to apply directly and make the annexation decision a land use decision under ORS 197.015(10)(a)(A)(i). In either case, the city's annexation decision is a land use decision."

*Cape*, 43 Or LUBA at 305.

The city argues that LUBA's analysis is flawed. The city first asserts that its annexation decision does not render the provisions of the acknowledged Washington County Comprehensive Plan inapplicable. Rather, according to the city, its annexation decision envisions continued applicability of the county plan until the city acts to implement its own plan and zoning designations in the annexed territory. The result, as the city describes it, is that at all times this annexation decision was subject to comprehensive plan provisions that had been acknowledged. The city points to its intergovernmental agreement with Washington County, the Urban Planning Area Agreement (UPAA). Under that agreement, property annexed to the city will remain under the county's comprehensive plan and zoning ordinance until the city adopts its own plan and zoning designations for the territory. The city states, "Inasmuch as both the City and County comprehensive plans are acknowledged, the statewide planning goals no longer apply to the political aspect of the annexation decision. The UPAA assures that the parties will cooperate during the transition period."

The UPAA provides, in pertinent part, that, upon annexation,

> "the CITY agrees to convert COUNTY plan and zoning designations to CITY plan and zoning designations which most

closely approximate the density, use provisions and standards of the COUNTY designations. Such conversions shall be made according to the tables shown on Exhibit 'B' to this agreement."[2]

Washington County—Beaverton Urban Planning Area Agreement, II(D). The UPAA also provides that the county is to advise the city of adopted policies that apply to the annexed areas, "and the CITY shall determine whether CITY adoption is appropriate and act accordingly." *Id.* at III(A).

The problem with the city's argument is that there is no basis for discerning whether the county and city policies are so closely related as to ensure that the acknowledgment given the county for its policies carries over to the city when the city adopts those policies that "most closely approximate" those of the county. That is, the addition of new territory and, with it, the uses on the subject property, may have an effect on the assumptions upon which other city planning decisions were based. As a result, the unrevised city plan may no longer reflect the conditions in the annexation area. While the UPAA may provide some continuity and certainty to the uses permitted on the newly annexed land, it does not answer whether the city's plan anticipated and incorporated the addition of this specific property into the city's corporate limits. The city does not, for example, point to a portion of its land use controls that make it certain that a change in city boundaries to include the territory annexed in the city's ordinance has been "planned for" in any comprehensive sense. The city's argument effectively permits it to bypass the combined effect of ORS 197.175(1) and OAR 660-001-0310 mandating that annexations must comply with the goals and that annexations not governed by an acknowledged comprehensive plan may not be considered to be in compliance with the goals.

Finally, in that regard, the city cites *Multnomah County v. City of Fairview*, 96 Or App 14, 771 P2d 289, *rev dismissed as improvidently allowed*, 308 Or 467, 781 P2d 1213 (1989), in support of its view that the land use portion of

---

[2] "Exhibit B" lists county and city "Land Use Designation Equivalents."

an annexation scheme need not be addressed before the political decision. The city's reliance on *City of Fairview* is misplaced. In that case, we addressed whether a city plan recommendation regarding use classifications for property outside the city required the city to apply such classifications after the property was annexed. The challenged city decision to rezone the property was taken a year after the property was annexed, and the questions of whether the annexation was a "land use decision" under ORS 197.015(10)(a)(A) or what criteria the city may have used in making the annexation decision were not addressed in the decision. More to the point are *Heritage Enterprises v. City of Corvallis*, 300 Or 168, 174, 708 P2d 601 (1985), and *Bear Creek Valley Sanitary v. City of Medford*, 130 Or App 24, 28-29, 880 P2d 486, *rev den*, 320 Or 493 (1994), both recognizing that the first decision in an annexation determines whether the proposed annexation is in accordance with the goals or other land use criteria and the second is the final adoption or rejection of the annexation.[3] If the determination of compliance with applicable land use criteria were to follow the political decision, then a significant possibility would exist that the decision to annex could not only avoid, but be in direct violation of, applicable land use criteria. We do not believe that the existing statutes and rules authorize such a practice.

Reduced to its simplest terms, the fact that the city's plan does not address the annexation of this property means that, under OAR 660-001-0310, the annexation cannot be considered to be in compliance with the goals. The result of that lack of compliance is that the annexation is subject to the goals. Because an annexation is the exercise of a planning and zoning responsibility subject to the goals, it is a land use

---

[3] LUBA added that it did not know why a city could not bifurcate the annexation process by addressing the statewide planning goal or comprehensive plan requirements in one decision and its other statutory criteria or criteria not related to land use in a separate decision. However, it cautioned that, in view of its conclusion that annexation decisions are subject to the goals or local land use criteria adopted in place of the goals, the decision addressing relevant land use criteria must be adopted and become final before or at the same time that a separate decision addressing ORS chapter 222 and other standards not related to land use is adopted. Otherwise, in LUBA's words, "the annexation could become an accomplished fact before the city establishes that the decision to annex is consistent with the relevant land use criteria that govern the decision to annex." *Cape*, 43 Or LUBA at 307-08.

decision under ORS 197.015(10)(a)(A)(i). LUBA correctly held that the goals apply to this annexation and, consequently, that the annexation decision comes within the definition set out in ORS 197.015(10)(a)(A)(i).[4] We reject the city's second assignment of error without discussion.

In summary, LUBA properly denied city's motion to dismiss.

Affirmed.

[4] We note that whether this annexation in fact complies with the goals was not an issue in the proceeding before LUBA. We imply no view on that matter.