Argued and submitted January 21, reversed and remanded June 16, 2004

Stefan D. BLOOMFIELD,
Molly M. Bloomfield,
Ruth H. Bloomfield, and Richard Andrew Bloomfield,
trustees of the
William M. and Ruth H. Bloomfield Trust U/A
dated July 9, 1980;
Milosh Popovich,
trustee of the Milosh Popovich Trust
dated January 29, 1991;
J. Michael Schwab; Steven W. Brookshire;
Robert M. Cortright; Joseph S. Cortright;
Cascadia Investment Co., LLC,
an Oregon limited liability company;
Lin L. Craft,
trustee of the Lin L. Craft Trust
dated December 23, 1998;
Bruce G. Blain; Patricia A. Blain; Janet Yarbrough;
Dokay, LLC,
an Oregon limited liability company;
Gary R. Jones; Sarah D. Wright;
Kathleen L. Buchner, fka Kathleen Weswig;
Robert Dean Jones and Hilda M. Jones,
as trustees of the Hilda M. Jones Trust;
and Bloomfield Associates,
a California limited partnership,
*Respondents,*

*v.*

Jean Marie WEAKLAND,
*Appellant,*

Sarah K. CHARTZ
and Brian D. Tooley,
*Respondents,*

*v.*

Jean Marie WEAKLAND,
*Appellant.*

Jean Marie WEAKLAND
and Margaret Anne Patricia Montgomery,
*Third-Party Plaintiffs,*

*v.*

Corinne LABARRE;
Valerie L. Tadda; Linda L. Craft; Kay Nelson;
Marilyn J. Thompson; and Lawrence K. LaBarre,
*Third-Party Defendants.*

003497 and 003480; A119891

92 P3d 749

George W. Kelly argued the cause and filed the briefs for appellant.

Thomas L. Gallagher, Jr., argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendant owns an oceanfront lot, Lot 14, in Sea Woods Park, which is a subdivision near Waldport, Oregon. Plaintiffs are owners of other lots in the subdivision who sought a declaratory ruling that they have an implied easement to the beach over defendant's property by virtue of a 1957 plat that depicted a 10-foot wide "Private Walk Way" over Lot 14. Defendant appeals from a judgment for plaintiffs on their implied easement claim. The court based the judgment on an order that granted plaintiffs summary judgment on their claims. Because we conclude that there are material issues of fact on the existence of the implied easement, we reverse the judgment and remand.

We summarize the evidence in the record on summary judgment. In 1935, Charles LaBarre acquired 5.5 acres of undeveloped land south of Waldport. His children (the LaBarre heirs) inherited the property in 1954. In 1955, the LaBarre heirs partitioned the property and conveyed to two heirs, two ocean-front parcels now encompassed within platted Lots 4, 5, and 6, to the south of and adjacent to what is now Lot 14. The deed to Gwen Craft, recorded in 1955, described an appurtenant easement across a 10-foot strip of what is now Lot 14 "for ingress and egress." The deed to Corinne LaBarre, recorded in 1993, also conveyed an "easement for ingress and egress over a strip of land 10 feet in width which is adjacent northwesterly to the [Craft property]." In 1956, the LaBarre heirs conveyed what became Lot 7 to Shipek by a land sale contract that made no mention of the walkway or of an easement.

The LaBarre heirs developed a plan to plat the property. The record on summary judgment contains a handwritten memorandum of Julia Pike, a now-deceased LaBarre heir, entitled "Family decisions 1956." The memorandum lists nine "decisions" discussed by the LaBarre heirs. Three are relevant to the issues on appeal. "Decision 2" states:

> "Access to beach (10 ft. wide) will be deeded to _____ to become part of lot 14 and shown as easement for privilege of owners of the subdivision."

"Decision 3" refers to a different part of the subdivision:

> "Give easement to Elkins in exchange for his right of way. Otherwise reserve 10 ft. strip of roadway and make it part of lot 10."

"Decision 7" states:

> "Have plat recorded as soon as feasible, Elkins easement settled and decision made on how far roads go and record restrictions with it revise restrictions to eliminate F.H.A."

In a later, typed document, Corrine LaBarre is listed as the grantee of Lot 14.

Clarence and Elizabeth Elkins owned land in the 1950s that was immediately to the south of Sea Woods Park. In March 1956, they dedicated a 15-foot strip of land over their property that connected the southern terminus of "Sea Woods Terrace," a public road in Sea Woods Park, with the property of the Clines, immediately to the south of the Elkins property. In October 1956, the Clines conveyed a right of way of a 5-foot public walkway, connecting the Elkins strip to the Pacific Ocean. Both conveyances were recorded on February 4, 1957. The next day, on February 5, 1957, the LaBarre heirs recorded a plat for Sea Woods Park. The plat defined the lots and roads in the subdivision. It "dedicate[d] to the use of the public as public ways forever all streets shown on said plat." The plat drawing depicts within the solid lines of Lot 14 a 10-foot "private walkway," but makes no mention of an easement reserved or dedicated across Lot 14. The plat drawing also depicts the Elkins dedication at the southern terminus of Sea Woods Terrace, labeled "Path to Beach." The plat was signed by all owners within the subdivision except Shipek, who was the only nonfamily member owner.

There is evidence in the record on summary judgment that, at the time that they drew up the plat, the LaBarre heirs contemplated that the private walkway would be for the benefit of all property owners in the subdivision, to the exclusion of the public. Corrine LaBarre, who signed the plat, testified by deposition:

> "It was put on the sheet what we discussed and one was access to the beach, ten-foot wide, needed to become part of

lot fourteen as shown on the easement walk for the privilege of owners of the subdivision lots. That was the—The wording to me is kind of ambiguous but—It certainly was discussed as potential access to the beach, that ten-foot strip. * * *

"When I say, easement, I mean available to all the lot owners. It's an easement available to them but not outside and, therefore, it was offered as a private walkway. * * *

"It means there is an easement to get down to the beach but that it is not open to the public in general."

Corrine LaBarre also testified that it was her understanding that the walkway was a separate parcel, not a part of Lot 14.

In June 1957, the LaBarre heirs divided the remaining subdivision lots among themselves, and Corrine LaBarre received a deed to Lot 14. None of the deeds referred to an easement over Lot 14. They simply conveyed the lots "as platted and recorded in Book 9, Page 7 of the Lincoln County Plat Records." In July 1957, the LaBarre heirs recorded building and subdivision restrictions for Sea Woods Park, making no mention of the walkway or of an easement over Lot 14.

Before defendant purchased Lot 14 in 1972, her attorney and her realtor reviewed the plat and researched Lincoln County records and found no record of an easement or encumbrance on Lot 14. The deed to the property described it as "free of all encumbrances." At that time, the Gwen Craft deed was of record, having been recorded in 1956, but the Corrine LaBarre deed had not yet been recorded. No deed of record to Lot 14 mentioned an easement over the walkway. The previous owners had posted a "Private" sign on the walkway but had allowed neighbors to use the walkway as access to the beach. Defendant's attorney advised her that the walkway depicted on the plat was private to Lot 14. Defendant continued to allow neighbors to use the walkway as a courtesy; however, she believed that she had full control of her property and did not know of an easement. After a 1988 burglary, defendant posted two additional "private" signs along the walkway but continued to allow her neighbors to use the walkway. The record on summary judgment shows that the owners in the subdivision used the

walkway for beach access until approximately 1991, when a stairway on the walkway became unuseable. It is undisputed that, since 1991, defendant has refused to allow anyone other than the owners of Lots 5 and 6 to use the walkway.

In 1993, the owners of lots in the subdivision other than Lot 14 formed Sea Woods Park, Inc., a nonprofit corporation, for the purpose of securing an easement over the walkway. All but two of the current plaintiffs were members of Sea Woods Park, Inc., in 1993.[1] In 1994, Sea Woods Park, Inc., filed a claim against defendant in Lincoln County Circuit Court asserting that, in platting the subdivision with the private walkway and conveying lots by deeds referring to the plat, the LaBarre heirs created a private dedication and grant of an easement over the walkway. The prayer sought unrestricted access to the beach by way of the walkway. The trial court granted summary judgment to defendant on that claim on the ground that Sea Woods Park, Inc., had no ownership interest in any property in the subdivision and, consequently, was not a real party in interest. The court then entered an order that allowed the real parties in interest to join the litigation. Only Lin Craft (Craft), the owner of Lot 5 and part of Lot 6, joined as a plaintiff. Sea Woods Park, Inc., continued to support the litigation through the payment of Craft's legal fees and through discussions with her about the issues in the case. Craft's amended complaint sought a judgment declaring her right to an easement over defendant's property and also sought a judgment "declaring the right of plaintiff to assign to other property owners in [Sea Woods] Park her right to have the use and enjoyment of the strip of land." Craft prevailed in the litigation. The court ruled that Craft had an easement appurtenant to her property for use of the walkway, based on the express grant of an easement in the 1955 deed to her mother, Gwen Craft. However, the trial court declined to rule on the existence of an implied easement for Craft or any other person by virtue of the platted walkway:

"While there has been evidence that the heirs of Charles LaBarre discussed making the private walk for the benefit

---

[1] Plaintiffs Blain and Yarbrough, owners of Lots 20 and 21, were not members of Sea Woods Park, Inc., in 1993.

of the owners of land in the Sea Woods Park subdivision, *this easement in favor of property owned by the Plaintiff exists irrespective of any rights she and others may or may not have as owners of lots in the subdivision by virtue of the designation of the 10 foot strip on the southwesterly portion of lot 14 designated as 'private walkway.' The Court does not have to decide that issue here and it may require other parties to the proceedings.* It is clear, however, that the Plaintiff has the rights of easement shown in the deed to her parents * * *. *The Court expresses no opinion regarding any claim of easement as to anyone else*, other than the owners of the property granted to the parents of the Plaintiff * * * may or may not have across Lot 14 in the 10 foot area marked private walkway. The Court also does not make a finding that the Plaintiff had any easement across the pathway by virtue of any open and hostile use for a 10 year period under claim of right. Of course as I explained above she had an easement irrespective of adverse use.

"*The Court also does not find that the Plaintiff or any other person has an easement by reason of the designation of the 10 foot strip 'private walkway' on the plat. The Court feels that was at least recognition of the easement given to the Plaintiff's parents and perhaps others, but was not in itself a grant of an easement.*"

(Emphasis added.) Further, the court rejected Craft's request that the court declare that she had a right to assign the easement to other owners. We affirmed that judgment without opinion. *Craft v. Weakland*, 145 Or App 482, 928 P2d 366 (1996).

In July 2000, plaintiffs filed the complaint in this action seeking a declaratory judgment establishing an easement by implication and an injunction. Plaintiffs Chartz and Tooley filed a separate complaint, seeking a declaration of an implied easement, an express easement, an easement by prescription, and an injunction. The cases were consolidated in March 2001. On the parties' cross-motions for summary judgment, the trial court entered a "Stipulated Judgment and Decree Granting Declaratory Relief" for plaintiffs under ORCP 67 B, determining that plaintiffs have "perpetual, nonexclusive easements by implication and reference to the Plat of the Sea Woods Park Subdivision for ingress and egress to the Pacific Ocean," and that the easement includes

a right to construct and maintain a pathway and a stairway for beach access. The court also granted plaintiffs an injunction preventing defendant from interfering with plaintiffs' use of the easement.

◼       Defendant first assigns error to the trial court's denial of her motion for summary judgment. Defendant based her motion on the contention that plaintiffs' claims are barred by claim preclusion. Initially, we reject plaintiffs' argument that defendant's execution of a stipulated judgment precludes her from challenging on appeal the denial of her motion for summary judgment.[2] ORS 19.245(3) provides that a party may appeal from a stipulated judgment if the judgment specifically provides that the party has reserved the right to appellate review of trial court rulings. Here, defendant explicitly reserved her right to challenge the trial court's summary judgment rulings.

◼       We address the merits of defendant's contention that plaintiffs' claims are barred by claim preclusion. Under the doctrine of claim preclusion (also known as *res judicata*), a plaintiff who has prosecuted one action against a defendant to final judgment, and those in "privity with the plaintiff," are barred from prosecuting another action against the same defendant " 'where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.' " *Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990) (quoting *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982)). Unlike issue preclusion (also known as collateral estoppel), claim preclusion does not require actual litigation of an issue of fact or law; nor does it require that the issue have been essential to the final or end result of the proceeding. It requires only that there have been an opportunity to litigate

---

[2] Plaintiffs argue that,

"[b]y stipulating to the entry of the judgment defendant led the trial court and the plaintiffs to believe that she agreed with the entry of the judgment without holding a trial on her *res judicata* defense. Defendant thus failed to preserve the argument that it was error for the trial court to enter the judgment without first holding a trial of defendant's *res judicata* defense."

the issue in a proceeding that produced a final judgment on the merits. *Drews,* 310 Or at 140. A final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive on the rights of the parties and those in privity with them and constitutes an absolute bar to a subsequent action involving the same transaction. The policies upon which the doctrine of claim preclusion is based include achieving finality on a dispute and preventing the splitting of a dispute into separate controversies. *Id.*

■     Claim preclusion most readily applies when the second action involves the same parties as the first; however, it also applies when a party to the second action was in privity with a party to the first. We have said that parties in privity are " '(1) those who control an action though not a party to it; (2) those whose interests are represented by a party to the action; and (3) successors in interest to those having derivative claims.' " *Secor Investments, LLC v. Anderegg,* 188 Or App 154, 167, 71 P3d 538 (2003) (quoting *Stevens v. Horton,* 161 Or App 454, 462, 984 P2d 868 (1999), *rev den,* 331 Or 692 (2001)).

■     We first address the question whether this action is based on the same factual transaction as the earlier action. As plaintiffs understand the prior ruling, it was based solely on an express easement in the 1955 deed, and "no decision was made concerning the effect of the Plat and the post-Plat deeds." Thus, in plaintiffs' view, the trial court in the first proceeding did not have before it the "factual transaction" of the effect of the plat and the "post-plat" deeds that underlie plaintiffs' claims in this proceeding. Despite the limited ground for the trial court's ruling in favor of Craft in the earlier action, the court had before it the same contentions and evidence concerning implied easements based on the plat, and, as we have noted, it expressly rejected the argument that "the Plaintiff or any other person has an easement by reason of the designation of the 10 foot strip 'private walkway' on the plat." We conclude that the underlying factual bases for the claim in the earlier proceeding were the same as those involved in the current claim.

■     Only Lin Craft, the owner of Lot 5 and part of Lot 6, was a plaintiff in the prior action, and there is no dispute that the current plaintiffs were not actual parties.[3] The question is thus whether plaintiffs were in privity with Lin Craft. In considering the concept of privity, the courts have not required literal privity between the parties. Rather, they have inquired whether "the first litigation provided substantial protection of the rights and interests of the parties sought to be bound in subsequent litigation." *McFadden v. McFadden et al*, 239 Or 76, 80, 396 P2d 2002 (1964). In defendant's view, the current plaintiffs were in privity with Lin Craft because, as owners or successors to owners in the subdivision, they either "controlled" the earlier litigation or their interests were represented by Craft. Plaintiffs assert that the notion of control as a basis for privity applies only with respect to issue preclusion and has no application to claim preclusion. They are correct. In *Ditton v. Bowerman*, 117 Or App 483, 487, 844 P2d 919, *rev den*, 316 Or 527 (1993), we held exactly that. Although, in subsequent decisions, *Secor Investments,* 188 Or App at 767; *Steiner v. E.J. Bartells Co.,* 170 Or App 759, 763, 13 P3d 1050 (2000); and *Stevens,* 161 Or App at 462, we have listed control of prior litigation as one of three possible bases for privity, we have never held that control of a prior action gives rise to privity for purposes of claim preclusion. We adhere to our holding in *Ditton* that control of prior litigation does not give rise to privity for purposes of claim preclusion. Thus, as a matter of law, plaintiffs' claims are not barred by claim preclusion through plaintiffs' alleged control of the earlier litigation.

Defendant also contends that plaintiffs are in privity with Craft because Craft represented them in the prior litigation. Defendant points to evidence in the record on summary judgment that the prior lawsuit was originally filed by Sea Woods Park, Inc., and that, after she was joined as a plaintiff, Craft represented the interests of the subdivision owners by requesting that the judgment give her the right to assign her easement to them. Although it is true that the record on summary judgment shows that Craft attempted to

---

[3] In this case, Lin Craft appears as a trustee of the "Lin L. Craft Trust," which was created in 1998. Defendant makes no separate argument on appeal with regard to the Lin L. Craft Trust.

place the interests of the other subdivision owners before the court in the prior litigation, she did not "represent" them in any formal capacity. Furthermore, because a source of Craft's claimed interest in the easement was an express grant in her mother's deed, Craft's interests were not truly aligned with plaintiffs, whose claims were dependent on the existence of an implied easement arising out of the plat. Accordingly, Craft could not have adequately represented the interests of the other owners. We conclude for those reasons that plaintiffs were not in privity with Craft and that the trial court did not err in rejecting defendant's defense that plaintiffs' claims are barred by claim preclusion.[4]

■     We turn to defendant's second assignment of error, in which she contends that the trial court erred in granting plaintiffs' motion for summary judgment on the existence of an implied easement. We agree with defendant that there are material questions of fact that preclude summary judgment for plaintiffs.[5]

■     An implied easement is an easement that exists by inference when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement. *Tyska v. Prest*, 163 Or App 219, 988 P2d 392 (1999); *Wayt v. Buerkel*, 128 Or App 222, 231, 875 P2d 499, *modified on recons*, 129 Or App 119, 816 P2d 868 (1994). Implied easements are disfavored and must be established by clear and convincing evidence. *Thompson v. Schuh*, 286 Or 201, 593 P2d 1138 (1979); *see Hayward v. Ellsworth*, 140 Or App 492, 915 P2d 483 (1996); *Smo v. Black*, 93 Or App 234, 761 P2d 1339 (1988); *Liles v. Wedding*, 84 Or App 350, 733 P2d 952 (1987). The provisions of an instrument relied upon to create an implied easement are to be strictly construed, with "any doubt being resolved in favor of the free use of the land." *Dressler v. Isaacs et al.*, 217 Or 586, 595, 343 P2d 714 (1959). In *Dressler,* the court explained the reason for this:

---

[4] Defendant does not contend that the earlier litigation necessarily determined the issue of the existence of an implied easement.

[5] We note that defendant does not assert that the trial court erred in failing to grant her motion for summary judgment on the existence of the implied easement.

> "It would seem enough to say that a [person's] land should not be burdened with an easement unless the intent to create it is clearly manifested or the circumstances are such as to clearly show that had the grantor considered the matter he would have intended an easement to burden his land."

217 Or at 596. The determination of the existence of an implied easement is inherently factual and involves a weighing of numerous factors, including those listed in the *Restatement of Property* § 476 (1944). *Thompson*, 286 Or at 212 (listing factors).

■ Plats referred to in deeds can give rise to implied easements. *See Carter and Mason v. City of Portland*, 4 Or 339 (1873). In *Menstell v. Johnson*, 125 Or 150, 178, 183-84, 262 P 853, 266 P 891 (1928), the court said that, when a deed refers to a plat,

> "[i]t seems well settled that the deed and the plat are to be read together and many authorities hold that whatever appears upon the plat is to be considered as a part of the deed."

Citing the *Restatement (Second) of Property* § 2.13, at 172 (2000), plaintiffs find support for the trial court's ruling in the "broad" view that deed descriptions of land that refer to a plat showing areas for common use or benefit imply the creation of a servitude for the benefit of the grantee, unless a different intent is expressed or implied by the circumstances. Plaintiffs argue that this view would be in contrast with the "strict" view stated in *Dressler* and other cases that deal generally with the implication of easements by grant or reservation in a transaction involving the division of a single parcel into two or more parcels. The implication of easements from a plat, plaintiffs contend, falls into a different category, because designations of public areas in plats cause reliance in buyers who acquire property with the expectation that the property will have certain characteristics that enhance its value. In plaintiffs' view, this case is appropriate for summary judgment because the subdivision plat, referred to in each of their deeds, depicts the 10-foot walkway, which would lead a reasonable purchaser to expect common access to the beach.

Plaintiffs' argument concerning the implications to be drawn from designations of common areas in a plat begs the very question at issue here—whether the "private walkway" on the 1957 plat is in fact an area designated for common use. That fact, in plaintiffs' view, can be conclusively determined based on evidence showing that, when the LaBarre heirs divided the property among themselves in July 1957, they intended to convey equal shares and would not logically have reserved the most central beach access for the owners of Lots 5, 6, and 14. Plaintiffs contend that any ambiguity on that question is resolved conclusively by evidence concerning prior use of the walkway and the physical characteristics of the subdivision, which make the walkway the most convenient beach access. In their view, no objectively reasonable finder of fact could fail to conclude on the summary judgment record that, when the LaBarre heirs divided the property among themselves, they intended to create beach access easements over Lot 14 by the private walkway noted on the plat.

Defendant asserts, however, that the summary judgment record reveals questions of fact as to the LaBarre heirs' intentions. First, defendant contends that the fact that the walkway is labeled "private" must be given some significance and may be taken to mean that the path is private to Lot 14 and to Lots 5 and 6, which are adjacent to Lot 14 and which, as determined in the prior litigation, have an express right to use the path by virtue of the 1955 deed to Gwen Craft. Defendant contends that, in labeling the path as private, the grantors could have intended to put the public on notice that the path was *not* available to the public or to other subdivision owners. In contrast, the path across the Elkins property, from which the beach is accessible by all owners in the subdivision, is clearly identified as a path to the beach.

Defendant asserts that the circumstances of the creation of the subdivision also give rise to questions of fact. For example, defendant notes that the LaBarre heirs created express easements in the pre-plat deeds to Gwen Craft and Corrine LaBarre and that the deed to Lot 14 contains an express easement for utilities, suggesting that the LaBarre heirs knew how to create an express easement and could have done so if they had so desired. Further, they contend,

the record shows that the LaBarre heirs knew how *not* to make an express easement, as illustrated by the 1956 land sale contract to Shipek, which made no mention of an easement over Lot 14. Defendant asserts that the express dedications in the plat also indicate that the LaBarre heirs knew how to dedicate property to the subdivision and suggest that, had they wanted to dedicate a path across Lot 14, they would have done so expressly.

In addition, defendant contends that, although the affidavits and depositions show that the LaBarre heirs used the walkway as their own access to the beach and may at one time have intended to create an easement over Lot 14 for the benefit of all subdivision owners, the evidence in the summary judgment record gives rise to an inference that the heirs decided *not* to create an easement after they obtained public beach access for the subdivision from the Elkins. This is supported, defendant contends, by the absence of an express dedication or deed of an easement over Lot 14 and by the fact that the LaBarre heirs filed the subdivision plat the day after the Elkins dedication was recorded. Defendant contends that the inference is further supported by evidence that, when plaintiff Milosh Popovich inquired into the purchase of a lot in 1959, the LaBarre heirs presented the Elkins easement as their beach access. Thus, in defendant's view, the record on summary judgment supports an inference that the LaBarre heirs abandoned any plans that they may have had for an easement over Lot 14. In short, she contends that plaintiffs have not given the court undisputed facts sufficient to compel a finding that, in designating the 10-foot strip on the plat as a private walkway, the LaBarre heirs intended to create an easement for the use of all the subdivision owners. Viewing the record on summary judgment in the light most favorable to defendant, *Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997), we agree that there are genuine issues of material fact that cannot be resolved on summary judgment.

■ ■ Defendant contends in her second assignment of error that, assuming the LaBarre heirs did intend to create an easement, she is a bona fide purchaser who took her interest free and clear of the easement. Defendant is correct that a

bona fide purchaser who buys land without notice of an easement takes the land free of the easement. *Silvernale v. Logan*, 252 Or 200, 205, 448 P2d 530 (1968). We agree with defendant that there are material questions of fact that preclude summary judgment on the question whether defendant was a bona fide purchaser.

In view of our disposition of the first two assignments of error, we do not address defendant's third assignment of error, in which she asserts that the trial court erred in granting plaintiffs' summary judgment on their request for an injunction.

Reversed and remanded.