Argued and submitted October 24, 2008, affirmed March 4, 2009

Mark C. COGAN
and Leupold & Stevens, Inc.,
*Respondents,*

*v.*

CITY OF BEAVERTON,
*Petitioner.*

LEUPOLD & STEVENS, INC.,
*Respondent,*

*v.*

CITY OF BEAVERTON,
*Petitioner.*

Land Use Board of Appeals
2008040, 2008041; A139820

203 P3d 303

William J. Scheiderich argued the cause for petitioner. With him on the brief was Alan A. Rappleyea.

Charles F. Hinkle argued the cause for respondents. With him on the briefs was Stoel Rives LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner City of Beaverton (the city) seeks review of a decision of the Land Use Board of Appeals (LUBA) reversing the city's decision denying respondent Leupold & Stevens, Inc.'s (Leupold) petition for a minor boundary change.[1] On review, the city contends that LUBA erred for two reasons. First, the city complains that LUBA did not properly construe the term "area of land" as used in Oregon Laws 2005, chapter 844, section 6, which is compiled as a note before ORS 222.111. Second, the city asserts that LUBA erred in concluding that Leupold's petition for a minor boundary change was not subject to claim preclusion. We conclude that LUBA's decision was correct on both of those issues. We therefore affirm.

The facts of this case are undisputed. Leupold operates a facility in Washington County in which it manufactures rifle scopes, binoculars, and other similar and related products. The facility is within the urban growth boundary of the Metropolitan Service District (Metro). On May 2, 2005, the Beaverton City Council adopted Ordinance 4350, in which, pursuant to ORS 222.750, it annexed five contiguous tax lots owned by Leupold without Leupold's consent.[2] Of those five lots, four were zoned for industrial use and one was zoned for residential use. Leupold's manufacturing facility along with parking areas and open space are all located on

---

[1] Respondent Mark C. Cogan petitioned to join the appeal to LUBA. Although respondents filed separate briefs, they were represented by the same legal counsel and raised similar, but not identical, arguments. We refer to both respondents as Leupold unless the context requires otherwise.

[2] ORS 222.750 provides, in part:

"(2) When territory not within a city is surrounded by the corporate boundaries of the city, or by the corporate boundaries of the city and the ocean shore, a river, a creek, a bay, a lake or Interstate Highway 5, the city may annex the territory pursuant to this section after holding at least one public hearing on the subject for which notice has been mailed to each record owner of real property in the territory proposed to be annexed.

"* * * * *

"(4) Unless otherwise required by its charter, annexation by a city under this section must be by ordinance or resolution subject to referendum, with or without the consent of any owner of real property within the territory or resident in the territory."

the four industrial parcels of land. The adjoining residential lot is treed and separated from the industrial lots by a fence.

Shortly following the May 2005 annexation, the legislature adopted Senate Bill (SB) 887, which is now Oregon Laws 2005, chapter 844, which we discuss in detail *post* (SB 887). The Governor approved that legislation on September 2, 2005, and it became effective on that date. The relevant section of the law applied to any annexation of property approved by the city on or after March 1, 2005. However, prior to September 2, 2005, Leupold had appealed Ordinance 4350 to LUBA and filed its petition for review before LUBA. In November 2005, after SB 887 was in effect, Leupold advanced a new argument to LUBA: SB 887 prohibited the annexation. Leupold later submitted supplemental memoranda and evidence to LUBA in support of that position. However, the city objected to LUBA considering the new evidence submitted by Leupold. Because LUBA could not resolve whether SB 887 applied without considering the new evidence that was not a part of the city's record in that case, LUBA declined to consider the issue. 51 Or LUBA 65 (2006) (*Leupold I*). Similarly, on a petition for judicial review of that decision, this court concluded that the application of SB 887 could not be considered because that determination depended on the existence of facts that were not in the record on judicial review in that case. *Leupold & Stevens, Inc. v. City of Beaverton*, 206 Or App 368, 375, 138 P3d 23, *rev den*, 341 Or 579 (2006) (*Leupold II*).

■ Thereafter, in June 2007, Leupold submitted a petition for a minor boundary change, requesting the withdrawal of *only* the four industrial-zoned lots from the city. The petition was brought pursuant to ORS 222.460[3] and the Code of the Metropolitan Service District chapter 3.09 (Metro Code). The city issued a February 2008 order denying the petition because

"SB 887 is not applicable to the [Leupold] property based on the plain text of the statute because it applies only to 'an

---

[3] ORS 222.460 authorizes a legislative body to order the withdrawal of territory from the city.

area of land' owned by an Oregon business that is industrially zoned and all of these requirements need to be read together and met.

"* * * The 'area of land' on which [Leupold] operates its business consists of all five of the contiguous lots that it owns and that were annexed by Ordinance 4350, and * * * one of those five lots is not 'zoned industrial' as is required to meet the exemption from annexation without consent stated in SB 887 Section (6)."

Within the order, the city adopted, as part of its findings, several staff reports and other documents. Leupold challenged the February 2008 order in circuit court, which transferred the case to LUBA.

LUBA reversed the order denying the boundary change, concluding that SB 887 applied to the property at issue and SB 887 had the legal effect of prohibiting the city's May 2005 annexation of the property. *Cogan v. City of Beaverton*, 58 Or LUBA 217 (2008). The city now petitions for judicial review of LUBA's decision.

*Sua sponte* we consider whether the city's order in this case was a land use decision that LUBA had jurisdiction to review.[4] *See Hillyer's Mid-City Ford, Inc. v. City of Woodburn*, 156 Or App 400, 403, 965 P2d 474 (1998) (the court is "required to consider jurisdictional issues *sua sponte*"). Pursuant to ORS 197.825(1), LUBA has exclusive jurisdiction to review land use decisions of a local government.[5] There is no question that the city's denial of Leupold's minor boundary change petition was a final decision that was

_____

[4] ORS 197.015(10)(a)(A) provides that a "land use decision" includes:

"A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)   The goals;

"(ii)  A comprehensive plan provision;

"(iii) A land use regulation; or

"(iv)  A new land use regulation[.]"

[5] ORS 197.825(1) provides that "the Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district or a state agency in the manner provided in ORS 197.830 to 197.845."

made by a local government. However, it is less clear whether the order meets the other criteria for a land use decision under ORS 197.015(10)(a)(A). Because the issue was raised by the parties, LUBA considered whether the city's order in this case was a land use decision:

> "Order 2058 is the city's decision in response to Leupold's petition to withdraw its property from the city. That petition was submitted pursuant to ORS 222.460 and Metro Code 3.09. Order 2058 adopts a number of documents as findings. Record 8. Among those documents is a January 28, 2008 staff report. Record 685-99. That staff report explains that under Metro Code (MC) 3.09.050(d) the city is required to adopt findings addressing a number of criteria. One of those criteria is MC 3.09.050(d)(3), which requires the city find the withdrawal is '[consisten[t] with specific directly applicable standards or criteria for boundary changes contained in comprehensive land use plans and public facilities plans[.]' Record 696. The staff report includes the following finding:

>> " '* * * The only policy of the City of Beaverton's Comprehensive Plan relating to boundary changes is Policy 5.3.1.d, which states "the City shall seek to eventually incorporate its entire Urban Services Area." The subject territory is within Beaverton's Assumed Urban Services Area * * *.' *Id.*

> "By virtue of the above finding alone, Order 2058 concerns the application of a comprehensive plan and for that reason is a land use decision. ORS 197.015(10)(a)(A)(ii)."

(Alterations and omissions in original.) We agree with LUBA's analysis.

Pursuant to ORS 268.354(1), Metro has authority to impose requirements for boundary changes within its jurisdiction.[6] Chapter 3.09 of the Metro Code, enacted pursuant to

---

[6] ORS 268.354 provides, in part:

"(1) In addition to the requirements established by ORS chapters 198, 221 and 222 for a boundary change, a metropolitan service district, in consultation with the Metro Policy Advisory Committee, may establish requirements for a boundary change that is subject to the jurisdiction of the district pursuant to ORS 268.347.

"(2) For a boundary change that is subject to the jurisdiction of the district pursuant to ORS 268.347, the district shall:

"(a) Establish a uniform hearing and notification process.

ORS 268.354, "applies to all boundary changes within the boundaries of Metro and any annexation of territory to the Metro boundary." Metro Code § 3.09.010. Before a city approves or denies any proposed boundary change, it must evaluate the proposed change and find that the proposed boundary change is consistent with the provisions of the applicable comprehensive plan. Metro Code §§ 3.09.045(d), 3.09.050(d). Thus, the city, when faced with the boundary change petition, was required to evaluate the proposed boundary change in light of its comprehensive plan, determine which provisions of the comprehensive plan might be relevant to the proposed boundary change, and determine whether the proposed boundary change was consistent with those provisions of the city's comprehensive plan.

As observed by LUBA, the city, in fact, engaged in that evaluation and concluded that its comprehensive plan was consistent with denial of Leupold's petition for a boundary change. Specifically, in this case, the city found that its comprehensive plan provided for the city to eventually seek to incorporate "its entire Urban Services Area" and that withdrawal of Leupold's four tax lots, zoned for industrial use, from the city was not consistent with that portion of the city's comprehensive plan. In evaluating Leupold's petition, the city was required to, and did, apply its comprehensive plan. The city's denial of Leupold's petition qualified as a land use decision and, therefore, pursuant to ORS 197.015(10)(a)(A), LUBA had exclusive jurisdiction. *See also Cape v. City of Beaverton*, 187 Or App 463, 470-71, 68 P3d 261 (2003) (annexation of territory was a final decision concerning application of statewide planning goals and, thus, a land use decision under LUBA's jurisdiction). We turn to the merits of the city's assignments of error.

The city argues that LUBA erred in construing the phrase "area of land" contained in SB 887, which provides:

"(b) Establish an expedited process for uncontested boundary changes.

"(c) Establish clear and objective criteria for a boundary change.

"(d) Ensure that a boundary change is in compliance with the Metro regional framework plan, as defined in ORS 197.015, and cooperative agreements and urban service agreements adopted pursuant to chapter 195."

"An *area of land* within the urban growth boundary of the metropolitan service district established in the Portland metropolitan area may not be annexed under ORS 222.750 if:

"(1) The *area of land* is larger than seven acres and is zoned for industrial use;

"(2) The land is owned by an Oregon-based business entity that has been in continuous operation, either directly or through a predecessor, for at least 60 years; and

"(3) The business employs more than 500 individuals on the land."[7]

(Emphasis added.) In its decision, LUBA stated, in part:

"The key term 'area of land' is not defined by statute, and dictionary definitions of 'area' and 'land' are not particularly helpful. Subsection (3) of SB 887 Section (6) requires that the 'business entity [must employ] more than 500 individuals *on the land.*' (Emphasis added.) Subsection (2) of SB 887 Section (6) requires that the area of land be at least seven acres in size and be zoned for industrial use. From those requirements for industrial zoning and location of the business entity on the 'area of land,' we believe it is reasonably clear that the legislature intended that the business entity referenced in SB 887 Section (6) must actually occupy the 'area of land' that would come within the annexation prohibition in some real and practical way, and use that 'area of land' for business purposes."

(Alteration in original; emphasis in original; footnote omitted.) After considering the undisputed facts, LUBA concluded that the single residential lot is not part of the "area of land" where Leupold's business is located, and that the "area of land" is made up of the four industrial lots only.[8] The city contends that "the plain meaning of an 'area of land' as used in the statute * * * contradicts LUBA's interpretation of those same statutory terms to mean that the property 'must be occupied in some real practical way.' " Pursuant to ORS

---

[7] This section applies to "an annexation of territory approved on or after March 1, 2005, and to an annexation of territory proposed on or after the effective date of this 2005 Act." Or Laws 2005, ch 844, § 9(2).

[8] Leupold did not include the residential lot within its petition for boundary change; Leupold's petition included only the four industrial lots.

197.850(9), we review LUBA's order to determine whether it was unlawful in substance or procedure.[9]

Based on our reading of the text of SB 887, section 6, we conclude that its requirements are unambiguous. Because the phrase "area of land" is not defined in SB 887, we consider the dictionary definition of "area." *Webster's Third New International Dictionary* 115 (unabridged ed 2002), in relevant part, defines an "area" as "a definitely bounded piece of ground set aside for a specific use or purpose." Pursuant to SB 887, section 6, then, the city may not annex (1) a definitely bounded piece of ground (2) set aside for a specific use or purpose (3) that is larger than seven acres, (4) zoned for industrial use, (5) owned by an Oregon business in operation for the requisite period of time and that (6) employs more than 500 individuals (7) on the land in question.

■    LUBA considered the provision that the requisite number of individuals be employed *on the land* to be a practical requirement that the business in question must actually occupy the land in question in order to be exempt from annexation. That reading is consistent with the plain meaning of the terms of the law. If a business owns land that is more than seven acres, zoned for industrial use, and on which more than 500 people are employed, and if the business itself meets the requirements of section 6, the city may not annex the property in question. Contrary to the city's position, it is of no moment that the business in question may own additional property that does not qualify for exemption under section 6. To the extent that any "definitely bounded piece of ground" fits all the categories set forth herein, it falls within the purview of SB 887, section 6. Accordingly, we conclude LUBA did not err on that issue.

---

[9] ORS 197.850(9) provides:

"The court may affirm, reverse or remand [LUBA's] order. The court shall reverse or remand the order only if it finds:

"(a)  The order to be unlawful in substance or procedure, but error in procedure shall not be a cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby;

"(b)  The order to be unconstitutional; or

"(c)  The order is not supported by substantial evidence in the whole record as to the facts found by the board under ORS 197.835(2)."

■   The city next asserts that LUBA erred in holding that claim preclusion did not prevent Leupold from establishing that it falls under the purview of SB 887, section 6. Specifically, the city argues that "Leupold already has had a full and fair opportunity to litigate whether SB 887 includes [Leupold's] property so as to exempt it from annexation without consent." We conclude that claim preclusion does not apply in this case.

■   Claim preclusion applies where parties have previously litigated a case against one another through final judgment. *Bloomfield v. Weakland*, 193 Or App 784, 792, 92 P3d 749 (2004), *aff'd*, 339 Or 504, 123 P3d 275 (2005). Under such circumstances, the parties may not prosecute a second action against one another "based on the same factual transaction that was at issue in the first, seek[ing] a remedy additional or alternative to the one sought earlier, and * * * of such a nature as could have been joined in the first action." *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990) (internal quotation marks omitted). The doctrine

> "does not require actual litigation of an issue of fact or law; nor does it require that the issue have been essential to the final or end result of the proceeding. It requires only that there have been an opportunity to litigate the issue in a proceeding that produced a final judgment on the merits."

*Bloomfield*, 193 Or App at 792-93.

Here, at the time the city annexed Leupold's property, SB 887, which Leupold urges precludes that annexation, had not yet been enacted. In fact, as observed by LUBA, SB 887 did not take effect until *after* the property was annexed and Leupold *appealed* the annexation to LUBA. Indeed, after SB 887 went into effect, Leupold brought the new law to LUBA's attention. Leupold argued that the annexation was precluded pursuant to SB 887 and submitted supplemental briefing and evidence to show that the factual predicates of the law were satisfied. It was the city that objected to the new evidence based on the fact that it had not been in the record during the proceedings before the city.

LUBA's review was limited to the record made in the proceedings before the city. ORS 197.835(2)(a). Further,

although, pursuant to ORS 197.835(2)(b), there are limited circumstances in which LUBA may admit evidence that was not before the local government, as LUBA noted in its opinion in this case, that would not have been permitted in *Leupold I*. In sum, there was no opportunity for Leupold to submit evidence and no opportunity to litigate before LUBA the question of whether Leupold's property fell within the purview of SB 887, section 6. For that reason, LUBA declined to consider SB 887's application to the city's annexation. Likewise, this court refused to consider the effect of SB 887 on judicial review in that case. *Leupold II*, 206 Or App at 375. Under those circumstances, we conclude that claim preclusion does not apply because Leupold did not have a full and fair opportunity to litigate the issue presented herein.[10] LUBA did not err in determining that claim preclusion did not apply.

Affirmed.

---

[10] We also note that, as Leupold and respondent Cogan point out, Cogan was not a party to the proceedings in *Leupold I*, nor was he in privity with a party. The city does not argue that claim preclusion should apply to Cogan.