Argued and submitted August 15, 2013, affirmed June 25, 2014

Romanna MANUSOS,
*Plaintiff-Respondent,*
*v.*

Francis L. SKEELS, Sr.;
and Donna F. Skeels,
Husband and Wife,
*Defendants-Appellants.*

Columbia County Circuit Court
062566; A151495

330 P3d 53

William C. Cox argued the cause for appellants. With him on the briefs was Gary P. Shepherd.

Robert J. Miller, Sr., argued the cause for respondent. With him on the briefs was Pamela Yee.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

This dispute between neighbors concerns plaintiff's access to a well located on defendants' adjacent property. It is before us for the second time. In our first decision, we concluded that the trial court had erred in reforming defendants' deed to reflect a waterline easement serving plaintiff's property, because plaintiff, who was not a party to the deed or in privity with any party to the deed, was not in a position to seek its reformation. *Manusos v. Skeels*, 238 Or App 657, 243 P3d 491 (2010), *rev den*, 350 Or 130 (2011) (*Manusos I*). We then remanded the case to the trial court to address plaintiff's remaining claims for relief, including her claim that defendants' parcel, which was once part of the same commonly owned land as plaintiff's parcel, was burdened by an implied waterline easement when the parcels were separately conveyed. On remand, the trial court agreed that plaintiff's property benefitted from an implied easement to access the well, and it awarded damages to plaintiff based on defendants' interference with that access.

Defendants now appeal the judgment entered after remand, arguing that the trial court misapplied the law of easement by implication. According to defendants, the court looked at the wrong moment of "severance" of plaintiff's and defendants' parcels to determine whether an implied easement existed between them, and that, in any event, plaintiff failed to demonstrate that the parties' common predecessor-in-interest intended any such easement when the parcels were conveyed separately to plaintiff and to defendants' predecessor. For the reasons that follow, we affirm.

Before describing the relevant facts, we pause to provide a brief summary of the law of implied easements. "When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created * * * by implication from the circumstances under which the conveyance was made alone." *Rose et ux. v. Denn et ux.*, 188 Or 1, 19, 212 P2d 1077 (1949), *on reh'g*, 213 P2d 810 (1950) (quoting *Restatement (First) of Property* § 474 (1936)). That is, an implied easement is created "when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement."

*Bloomfield v. Weakland*, 193 Or App 784, 795, 92 P3d 749 (2004), *aff'd on other grounds*, 339 Or 504, 123 P3d 275 (2005). "A number of factors are used to determine whether an easement has been created by implication, including 'the claimant's need for the easement, the manner in which the land was used before its conveyance, and the extent to which the manner of prior use was or might have been known to the parties.'" *Fischer v. Walker*, 246 Or App 589, 598, 266 P3d 178 (2011) (quoting *Penny v. Burch*, 149 Or App 15, 19, 941 P2d 1049 (1997)); *see also Cheney v. Mueller*, 259 Or 108, 118-19, 485 P2d 1218 (1971) (listing relevant considerations regarding creation of an easement by implication); *Jack v. Hunt et ux.*, 200 Or 263, 267-70, 264 P2d 461 (1953), *on reh'g*, 265 P2d 251 (1954) (same). Implied easements are disfavored and must be established by clear and convincing evidence. *Thompson v. Schuh*, 286 Or 201, 203, 593 P2d 1138 (1979).

With that overview of the law, we turn to the relevant facts, which we set forth in a manner consistent with the trial court's express and implicit factual findings. *See Eagles Five, LLC v. Lawton*, 250 Or App 413, 415, 280 P3d 1017 (2012) (describing the standard for reviewing a trial court's ruling that a party proved a claim for an implied easement).[1]

This case involves two parcels, a northern parcel and a southern parcel, that were once owned by Gordon Foster. Foster purchased the adjacent parcels in 1990, and he made various improvements in the early 1990s—most notably, the addition of a koi pond and an irrigation well that served the pond and provided water to gardens on the property. That irrigation well was added because the existing domestic well was insufficient for the needs of the pond and gardens. In April 2000, a year before he died, Foster

---

[1] Defendants argue that we must review this case *de novo* because their earlier appeal was commenced at a time when that was our standard of review for equitable proceedings. We are not persuaded by that argument. The judgment now on appeal was entered in April 2012, and the notice of appeal was timely filed in May 2012, so *de novo* review in this equitable proceeding is discretionary. *See* Or Laws 2009, ch 231, §§ 2, 3 (amending ORS 19.415 to provide for discretionary *de novo* review in equitable cases in which the notice of appeal is filed after June 4, 2009). This is not an exceptional case where *de novo* review would be appropriate, and we decline to exercise our discretion to conduct such a review.

completed a lot line adjustment that changed the dimensions of the northern and southern parcels. The adjustment resulted in a southern parcel that was approximately two acres and a northern parcel that was approximately eight acres. What is most relevant to this case, though, is that the irrigation well was not on the same parcel as the koi pond it served; the koi pond, along with circuit breakers for the electrical pump, were on the southern parcel, while the well itself was on the northern parcel.

In 2001, Foster died and both parcels passed to his estate. Sometime the following year, plaintiff and the Cowleys, who are plaintiff's daughter and son-in-law, discovered the Foster property while looking for rural real estate. Plaintiff and the Cowleys had been interested in property that they could divide so that they could live nearby each other. Plaintiff was drawn to the lush gardens on the property, and a real estate flyer for the southern parcel listed "Irrigation/Koi Pond with Arbor" among the property's features. Plaintiff asked about the irrigation and was told that a well serviced the property. The personal representative of Foster's estate agreed to sell the parcels separately, one to plaintiff and the other to the Cowleys. Plaintiff purchased the two-acre southern parcel, which included the koi pond and a residence, on May 7, 2002. The next day, May 8, 2002, the Cowleys purchased the eight-acre northern parcel, which included the irrigation well but was otherwise undeveloped. Although the deeds refer to access and utilities easements, neither plaintiff's deed nor the Cowleys' deed makes any reference to a well, well easement, or irrigation system.

After plaintiff and the Cowleys purchased their respective parcels, the Cowleys established a second well on the northern parcel (apart from the irrigation well) and put a mobile home on the parcel. Meanwhile, plaintiff expanded the gardens on the southern parcel and used the irrigation well on the northern parcel to water the gardens and supply the koi pond.

That arrangement continued without complication until 2004, when the Cowleys decided to sell their parcel to defendants. The Cowleys wanted to ensure that plaintiff would retain access to the irrigation well after they sold

their parcel, and they communicated that fact to defendants before the sale closed. The property disclosure statement listed a "water line easement" as a claim affecting the Cowley property, and the sales agreement provided that "[b]uyer agrees to allow current owner of property located to the south access to [irrigation] well." The Cowleys and defendants executed a document entitled "Addendum to Real Estate Sale Agreement," which stated that "[s]eller will comple[te] and pay cost of easement for waterline to adjacent property," and they likewise executed an amendment to their escrow instructions that stated:

> "Seller and Buyer hereby acknowledge that a waterline easement is being prepared but is not completed at the time of signing. Seller and buyer hereby authorize Fidelity National Title to close this escrow before easement is recorded and further to hold Fidelity National Title harmless of the content of said Easement."

The sale ultimately closed, and a statutory warranty deed was conveyed, before the Cowleys recorded a waterline easement.

On March 15, 2005, defendants recorded their deed with the county. The following day, the Cowleys recorded a document purporting to grant a waterline easement burdening the northern parcel—notwithstanding the fact that they no longer owned that parcel. Neither the Cowleys nor plaintiff notified defendants when they recorded the purported easement.

Defendants eventually moved onto the northern parcel, while plaintiff continued living on the southern parcel. Plaintiff continued to draw water from the well until, approximately a year after defendants first moved onto their property, a dispute arose between plaintiff and defendants over use of the well. As a result of the dispute, plaintiff's water was interrupted, and her koi fish and some of her plants and shrubs died.

Plaintiff then filed this action in which she alleged, *inter alia*, a claim to reform the deed that the Cowleys conveyed to defendants such that it would include a waterline easement; a claim to establish an easement by estoppel; and a claim to recognize an easement by implication. After a

bench trial, the court ruled in plaintiff's favor on the reformation claim and awarded plaintiff $3,373 for defendants' interference with plaintiff's right to use the well and consequent damage to her fish, plants, and shrubs. The court did not reach plaintiff's claims regarding easement by estoppel or easement by implication.

As noted above, we later reversed that judgment in *Manusos I*, concluding that, "[b]ecause plaintiff was neither a party to the deed nor in a relationship of privity with any party to the deed, the trial court erred in granting her relief in the form of reformation of that deed." 238 Or App at 662. We remanded the case to the trial court, with the explicit qualification that "we state no opinion about whether plaintiff may be entitled to relief on any of her other claims, issues that the trial court did not have occasion to address." *Id.* at 662-63.

On remand, the trial court considered plaintiff's alternative claims that she was entitled to an easement by estoppel or an easement by implication. The court, in a letter opinion, ruled that defendants' statements to plaintiff could be construed, at most, as granting a license to use the well, and that plaintiff therefore had not established her claim to an easement by estoppel.[2] However, the court ruled in plaintiff's favor on her claim of easement by implication.

With regard to the latter claim, the trial court issued two letter opinions. In the first opinion, the court set out the relevant legal test—*i.e.*, "[W]hen land in one ownership is divided into separately owned parts by a conveyance, an easement may be created * * * by implication from the circumstances under which the conveyance was made alone." (Quoting *Rose*, 188 Or at 19). The court then focused on the relevant "division" of the property, concluding that it occurred *after* the Foster estate sold the parcels separately to plaintiff and the Cowleys. The court explained:

> "The conveyance between the Foster estate and [plaintiff] and Cowley did not create either a dominant or servient estate *but rather that occurred when Columbia County*

---

[2] Plaintiff challenges that ruling by way of a contingent cross-assignment of error. Because we affirm the trial court's ruling with regard to an implied easement, we do not address plaintiff's cross-assignment.

> *agreed to the division of the Foster property into two sepa-*
> *rate parcels, one for the Cowleys and one for [plaintiff]."*

(Emphasis added.) The court further reasoned that the circumstances, at the time of that purchase and subsequent "division," sufficiently demonstrated an easement by implication.

After the court issued that opinion, but before judgment was entered, defendants insisted that the trial court had made a factual error regarding the "division" of the Foster property. Defendants argued that, contrary to the court's findings, the property had not been divided into two parcels after or as part of the Foster sale but, rather, "[p]laintiff's and defendants' respective parcels were created on April 13, 2000 by lot line adjustment of then owner Foster."

In a second letter opinion, the trial court acknowledged that it had been mistaken about the division of the Foster parcels, explaining:

> "It appears [plaintiff] and Ms. Cowley were confused as to when the two separate parcels they purchased were created. Not only were [plaintiff] and Ms. Cowley confused but the testimony of three neighbors all indicating Mr. Foster treated the two parcels as a single piece of property added to the Court's confusion that a division of Mr. Foster's property occurred after [plaintiff] and Cowley purchased it. That division was done by Mr. Foster apparently by a lot line adjustment prior to his death and before purchase by [plaintiff] and Cowley."

That factual discrepancy notwithstanding, the trial court adhered to its previous conclusion that plaintiff established an easement by implication:

> "The authority cited by this Court in its most recent letter remains unaffected by the confusion of when the two parcels were created in respect to the purchase by [plaintiff] and Cowley. *Jack v. Hunt*, cited by this Court in its earlier letter, does not include a consideration of whether there was a division of land. [*Garrett v. Mueller*, 144 Or App 330, 927 P2d 612 (1996), *rev den*, 324 Or 560 (1997), and *Dressler et al v. Isaacs et al*, 217 Or 586, 343 P2d 714 (1959),] cited by all parties herein makes it clear the elements of an

easement by implication have been met by Plaintiff and the Court's ruling will stand."

The trial court then entered judgment in favor of plaintiff that stated:

"An implied easement burdening Defendants' property and benefitting Plaintiff's property *was created by the division and sale of the Foster parcel.* The implied easement allows Plaintiff and her successors exclusive use of and access to the [irrigation well] located on defendant's property, as well as exclusive use of and access to the electrical lines, electrical system, and water lines running from the [irrigation well] to Plaintiff's property (collectively, the 'Manusos Easement.')."

(Emphasis added.) The court also awarded plaintiff damages in the amount of $3,373 for defendants' interference with the easement and damage to plaintiff's fish, plants, and shrubs.

On appeal, defendants advance a single assignment of error in which they contend that "[t]he circuit court misapplied the law by awarding [plaintiff] an implied easement on and over [defendants'] property." In support of that argument, defendants again point to the trial court's treatment of the "division" or "time of severance" of the two parcels, but their argument has now morphed. Rather than asserting, as they did below, that the two parcels were created by Foster's lot line adjustment in 2000, defendants now assert that the separate parcels were actually created sometime before Foster ever acquired them. Defendants submit:

"The division of the land (when unity of title is severed) is the time for determining what rights were impliedly created. That took place prior to 1990 when the Fosters acquired the property. In 2000, only their dimensions were changed through a lot line adjustment process."

We are not persuaded that the court committed reversible error with regard to the issue of "severance." First, to the extent that defendants now argue that the court made a factual error in treating Foster's property line adjustment as the "creation" of the two parcels, that contention was not raised below—and could even be characterized as invited

error.[3] *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) ("[A] party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." (Internal quotation marks omitted.)). Second, to the extent that defendants challenge the trial court's understanding of the *law* concerning "severance," their view finds no support in Oregon cases.

It is black-letter law that an easement may be implied "by inference when the circumstances that *exist at the time of severance of a parcel* establish that the grantor of the parcel intended to create an easement." *Bloomfield*, 193 Or App at 795. Contrary to defendants' argument, it is equally well established that "severance of a parcel" refers to the division of *ownership* of land, not a division that occurs through a platting process or partition but does not change ownership of the parcels. That is, without exception, implied easement cases have focused on a common grantor's intent at the time of *conveyance* of a parcel. *E.g., Cheney*, 259 Or at 118 ("*Rose* and *Dressler* approved the rule as stated in 5 *Restatement*, Property § 476, setting forth the following factors as 'important' in determining 'whether *the circumstances under which a conveyance of land (was) made imply an easement*'" (Emphasis added.)); *Eagles Five, LLC*, 250 Or App at 424 ("Such an easement arises as an inference of the intention of the *parties to a conveyance of land* based on the circumstances existing *at the time of the conveyance* * * *." (Emphasis added.)); *Fischer*, 246 Or App at 598 (same); *Garrett*, 144 Or App at 341 ("[T]he essential question is whether a reasonable purchaser would be justified in expecting the easement *under the circumstances in which he or she purchased the land*." (Emphasis added.)). Until the moment of conveyance—when common ownership is severed—the question of an implied easement does not arise, because the owner has unrestricted use of both parcels. *Cf. Witt v. Reavis*, 284 Or 503, 509, 587 P2d 1005

---

[3] Defendants expend considerable effort casting the factual discrepancy about the creation of the parcels as the product of "misrepresentation" by plaintiff. We have no reason to doubt the trial court's finding that plaintiff and Ms. Cowley were simply confused about the history of the parcels—especially considering the fact that defendants' counsel had also made statements to the effect that "[t]hese parcels existed only after 2000. They were partitioned in 2000 by Mr. Foster."

(1978) (following the *Restatement* rule that an easement is permanently extinguished when the dominant and servient parcels are acquired by the same owner, and observing that "this rule will enable the parties to focus on the separate issue of whether a new easement was thereafter created by implication and will, we hope, avoid confusion as to the precise issues involved in such cases").

In short, there is no legal support for defendants' theory that, for purposes of considering the existence of an implied easement, the relevant "severance" occurred while (or even before) the northern and southern parcels were commonly owned by the Fosters.[4] The trial court correctly focused on the severance of the northern and southern parcels that occurred when the Foster estate conveyed the southern parcel to plaintiff and retained the northern parcel to convey to defendants' predecessors, the Cowleys.

Alternatively, defendants advance various arguments as to why, even assuming that the conveyance to plaintiff was the relevant "severance," the record lacks clear and convincing evidence that an implied easement was intended at the time of conveyance. Only two of those arguments, which raise issues of law, merit discussion.[5] First, defendants contend that, because Foster recorded express easements— access easements and a road maintenance agreement—in the process of adjusting the lot lines in 2000, "[a]s a matter of law it is to be presumed that Mr. Foster did not intend to establish the water system easement asserted by [plaintiff]." In support of that argument, defendants rely on the evidentiary presumption that "a person takes ordinary care of the person's own concerns." OEC 311(b).

Even assuming that OEC 311(b) could create a presumption from Foster's failure to record an express waterline

---

[4] Defendants' contention that "unity of title" was severed "prior to 1990 when the Fosters acquired the property," is itself curious, considering that the Fosters had title to both parcels. *Cf. Jack*, 200 Or at 268 (explaining that "unity of title in the tract of land [was] severed" when one of the commonly owned parcels was sold to another).

[5] Many of defendants' other arguments hinge on their version of the relevant facts and the inferences to be drawn from those facts. Because we decline to exercise our discretion to review the record *de novo*, ORS 19.415(3)(b); ORAP 5.40(8)(c), those arguments are unpersuasive.

easement—which is itself a dubious proposition, considering that such an easement was unnecessary for Foster's use and enjoyment of his own property—presumptions under OEC 311 are rebuttable, not conclusive. *See State v. Rainey,* 298 Or 459, 462 n 2, 693 P2d 635 (1985) ("No conclusive presumptions, as such, were carried over to OEC because conclusive presumptions are, in effect, rules of substantive law and not rules of evidence." (citing Kirkpatrick, *Oregon Evidence* 69 (1982) (Legislative Commentary to OEC 311))). Here, there was substantial countervailing evidence to suggest that the Foster estate would have intended for the irrigation well to continue serving the southern parcel as it had since Foster originally installed it, including evidence that the parcel was advertised as including the koi pond with irrigation; the southern parcel's domestic well alone was insufficient to serve the koi pond; and plaintiff was drawn to the lush gardens, inquired about the property's irrigation before purchasing it, and was told that a well serviced the property. Regardless of any presumptions, the trial court was entitled to find, on this record, that the circumstances of the conveyance to plaintiff implied that she received an easement to use the well. *See Garrett,* 144 Or App at 341 ("If there was a previous apparent and permanent use of the land that is important for the enjoyment of the parcel that the common owner sold, the courts may imply that the purchaser received an easement, measured by the pre-existing use, over the parcel that the common owner retained.").

The second of defendants' alternative arguments is that plaintiff failed to demonstrate the requisite "necessity" for an easement to use the well. According to defendants, "[a]nother essential element in establishing an implied easement is necessity," and plaintiff "has not established that a reasonable person would be unable to use her property as a residence without burdening appellants' property as she proposes." However, as plaintiff correctly observes, defendants overstate what is required to demonstrate "necessity" for an easement implied from prior use.

The Supreme Court has repeatedly rejected the notion that "absolute necessity" is required for an implied easement. In *Jack,* the court explained:

"We are of the opinion that in matters of this kind the rule should be less strict than that of absolute and indispensable necessity. However, such a rule of reasonable necessity should not be grounded in mere convenience, but rather in the necessity appearing from the apparent purpose, the adaptability, and the known use to which the property is to be put. This so that the court may say that the parties as reasonable men contemplated and duly considered the continued use of the quasi easement claimed as necessary to a reasonable enjoyment of the dominant estate at the time of conveyance.

"'Reasonable necessity' as distinguished from 'absolute and indispensable necessity' is, therefore, relative and not in itself controlling, for whether or not an easement is created is primarily one of construction permitting the courts to weigh all of the circumstances attendant upon the conveyance in determining whether the parties intended that an easement should be created."

200 Or at 269 (citing *Rose*, 188 Or 1).[6]

Here, plaintiff presented sufficient evidence to demonstrate that, under the circumstances of the conveyance from the Foster estate, both plaintiff and the Foster estate would have understood that continued use of the well was reasonably necessary to her use and enjoyment of the southern parcel and its koi pond and gardens. The trial court did not err in rejecting defendants' contrary argument.

Finally, at the end of their assignment of error, defendants append arguments that assert pleading deficiencies, challenge the trial court's award of damages for interference

---

[6] Defendants' argument tracks the type of necessity required for an "easement by necessity," which the Supreme Court has distinguished from an easement implied from prior use. In *Thompson*, the court explained:

"Plaintiffs asserted in oral argument before this court that an easement by implication is to be distinguished from an easement by necessity and that the cessation of necessity does not affect the easement by implication. *We agree with those assertions and note that the necessity element serves a different function as a factor for easement by implication than it does as the basis for easement by necessity.* With the former type of easement the necessity element is used as an indicator of the intent of the grantor and grantee at the time of the conveyance, while with the latter it is *primarily of the nature of an on-going requirement, though it is also based upon the presumed intent of the conveying parties.*"

286 Or at 214 (emphasis added).

with the implied easement, and challenge the scope of the easement set forth in the judgment. Even assuming that those asserted errors are properly encompassed by defendants' assignment, defendants do not identify where in the record those issues were raised and preserved below. *See* ORAP 5.45(4)(a)(ii) (requiring parties to "set out pertinent quotations of the record where the question or issue was raised and the challenged ruling was made, together with reference to the pages of the transcript or other parts of the record quoted or to the excerpt of record if the material quoted is set out in the excerpt of record"). We decline to search the record to discover whether defendants presented the same pleading, damages, and scope-of-easement arguments to the trial court. ORAP 5.45(4)(c) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved."); *Resources Northwest, Inc. v. Crothers*, 153 Or App 24, 26-27, 955 P2d 763 (1998) (explaining that "we have declined to reach assigned errors where noncompliance with the rules has required this court to search the record to review relevant motions, rulings, and arguments").[7]

Affirmed.

---

[7] We note that, even with regard to the questions that we have addressed in this opinion, the "preservation of error" section of defendants' brief is inadequate in that it fails to identify the parts of the record where the issues were raised and the challenged ruling was made. However, as to those questions, it was apparent from the trial court's letter opinions that the same issues had been raised below and ruled upon by the court.