Submitted June 11, 2019, affirmed June 17, 2020

Michael P. GHIGLIERI,
*Plaintiff-Respondent,*
*v.*
Eric S. TOMALAK
and Holly Anne Tomalak,
Trustees of the Eric S. Tomalak Living Trust,
*Defendants-Appellants.*

Jackson County Circuit Court
17CV13826; A167699

469 P3d 262

In this dispute between neighboring landowners, plaintiff claimed that he has an express or implied easement over a portion of defendants' property and that defendants have interfered with that easement by building a fence. In particular, as to an implied easement, plaintiff argued that an implied easement is reasonably necessary to access his own property and that, when the two properties were taken out of common ownership, his predecessor would have been justified in expecting an implied easement under the circumstances. The trial court ruled on summary judgment that plaintiff does not have an express easement but does have an implied easement and that defendants have interfered with the implied easement. Defendants appeal, arguing that the trial court erred in granting summary judgment to plaintiff on the implied easement and interference claims. *Held*: The trial court did not err. There is no genuine dispute of material fact and, on this record, plaintiff was entitled to judgment as a matter of law that an implied easement exists and that defendants have interfered with it.

Affirmed.

Benjamin M. Bloom, Judge.

Michael W. Franell filed the briefs for appellants.

Joseph M. Charter filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

This is an easement dispute between neighboring landowners. Plaintiff brought this action alleging that he has an express or implied easement over a portion of defendants' property and that defendants have interfered with that easement by building a fence. The trial court ruled on summary judgment that plaintiff has an implied easement and that defendants have interfered with it. Defendants appeal. We affirm.[1]

## I.   STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C. A material fact is "one that, under applicable law, might affect the outcome of a case." *Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). "On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019).

## II.   FACTS

This case involves two adjacent properties situated between Highway 62 and the Rogue River. Lot 100 is upriver, has a house on it, and is currently owned by plaintiff. Lot 2400 is downriver, undeveloped, and currently owned by defendants. Both lots are accessed from the highway via a driveway on Lot 100; the highway is "quite a ways above the level" of Lot 2400. The first photo in the Appendix shows the general layout of the properties (with the white captions added by the court for reference). The following is a summary of the evidence in the summary judgment record.

---

[1] Plaintiff cross-assigns error to the trial court's summary judgment ruling in favor of defendant on plaintiff's alternative claim for an express easement, *i.e.*, its ruling that plaintiff does not have an express easement. Given our disposition, we need not discuss the cross-assignment.

Prior to 1984, Ralph Train owned both lots and built the house on Lot 100. In 1984, Train conveyed Lot 2400 to Bettis. The deed expressly reserved "an easement for ingress and egress" over Lot 2400 for the benefit of Lot 100.[2]

Around 2003—when Train owned Lot 100 and Bettis owned Lot 2400—someone built a "woven wire" fence, "like a horse fence," on Lot 2400. The fence was located well inside Lot 2400. It is unknown who built the fence or why.

Soon thereafter, Train died, and Lot 100 appears to have gone into foreclosure. In 2004, the Richmonds obtained ownership of Lot 100, and, in 2005, they purchased Lot 2400 from Bettis, thus bringing the two lots back into common ownership.

In 2007, the Richmonds sold both lots to defendants. As part of the same transaction, defendants obtained a mortgage from the Federal National Mortgage Association (Fannie Mae), which resulted in Fannie Mae acquiring a property interest in Lot 100 by way of a deed of trust.

In 2011, Fannie Mae foreclosed on Lot 100. As a result of the foreclosure, the lots were once again in separate ownership.

In 2012, Fannie Mae conveyed Lot 100 to plaintiff,[3] and plaintiff's son moved into the house. That same year, plaintiff's son replaced the wire fence on Lot 2400 with a wooden fence, erroneously believing it to mark the property line. In 2014, plaintiff's son built a carport on Lot 100, attached to the garage, at a cost of $4,750.

In 2017, defendants, who had by then transferred their property interest to a trust, obtained a survey of Lot 2400. Soon thereafter, defendants erected a fence on the property line, and they removed the wooden fence that plaintiff's

---

[2] Defendants speculate that the 1984 easement may have been written incorrectly, because Lot 100 is directly accessible from Highway 62, whereas Lot 2400 is accessible only by crossing Lot 100, and yet the only easement contained in the 1984 deed is an easement across *Lot 2400* for "ingress and egress" to *Lot 100*.

[3] Plaintiff initially co-owned Lot 100 with his son's wife, Czan, but Czan conveyed her interest to plaintiff after she divorced plaintiff's son, leaving plaintiff the sole owner.

son had built on Lot 2400. The new fence is approximately 20 feet from the garage of the house on Lot 100. The second photo in the Appendix shows both the fenceposts for the new fence on the property line and the older wooden fence built by plaintiff's son in 2012 (with the white captions added by the court for reference).

Once defendants built a fence on the property line, plaintiff's son could no longer turn into his carport, because the "average turn[ing] radius of a car is 35.5 feet." He had to remove the carport because he "could not make the turn without hitting the fence." Plaintiff's son also spent $460 to pour a concrete ramp near the driveway, as cars otherwise would get stuck coming down the driveway after the fence went in. Because of the new fence, plaintiff's son has "to drive [his] car north past the entrance to the top of the drive and reverse and then back down the driveway to the garage area"; "[t]here isn't enough room to turn around at the bottom of the drive due to the closeness of the fence"; "it is impossible to back out and up the steep driveway and on to Highway 62"; he "cannot drive forward down [the] driveway because there is no way to turn around"; and he "cannot leave [the] property at night because, without the aid of headlights to see behind [him], it is extremely dangerous to back down the driveway in the dark." It is also "very difficult to accurately maneuver a vehicle in the limited space between the fence and the garage," and at least one post has already been hit by a vehicle.

Within a few months of defendants building the new fence, plaintiff filed this action, asserting, as relevant here, claims for express easement, implied easement, and interference with easement. The parties cross-moved for summary judgment on those claims. The trial court ruled in defendants' favor on the express-easement claim. On the implied-easement and interference claims, however, it ruled in plaintiff's favor, granting summary judgment to plaintiff and denying it to defendants:

> "[T]he court concludes that plaintiff is entitled to summary judgment on its second claim for relief for Implied Easement and its fourth claim for relief for Interference with an Easement. Defendant has offered no admissible evidence

[that] would create an issue of material fact about whether plaintiff had used the disputed area and whether he had a reasonable necessity to use the same. Additionally, there is no dispute regarding plaintiff's damages as a result of the loss of the carport and building the remedial concrete ramp in the interference with easement claim."

The trial court entered a general judgment consistent with its rulings. In the judgment, the court ordered and adjudged that defendants have "granted, by implication, an easement for a driveway, parking area, and vehicle turn around necessary to the reasonable enjoyment by the owners and possessors of the house located [on Lot 100], for use of a portion of the property located [on Lot 2400]." The court described the easement as "reasonably necessary for Plaintiff's access to the residence, garage, parking, and property storage located on Lot 100." The easement "extends 30 feet south of Plaintiff's south property line" to the edge of the gravel drive. (In the first photo in the Appendix, the easement area is the roughly rectangular area to the right of the shared property line, labelled "disputed area.") Finally, the court ordered defendants to remove their fence; not to install any structures, barriers, fences, buildings, or other improvements of any kind in the easement area; and to pay plaintiff $5,210 in damages.

Defendants appeal. In their three assignments of error, they challenge the trial court's grant of summary judgment to plaintiff on plaintiff's implied-easement claim, denial of summary judgment to them on plaintiff's implied-easement claim, and grant of summary judgment to plaintiff on plaintiff's interference-with-easement claim.

## III. IMPLIED EASEMENT

### A. *General Legal Principles*

"When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created \*\*\* by implication from the circumstances under which the conveyance was made alone." *Rose et ux. v. Denn et ux.*, 188 Or 1, 19, 212 P2d 1077 (1949), *reh'g den*, 188 Or 26 (1950) (quoting *Restatement (First) of Property* § 474 (1936)). "That is, an implied easement is created when the

circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement." *Manusos v. Skeels*, 263 Or App 721, 723, 330 P3d 53 (2014) (internal quotation marks omitted).

Although the grantor must have intended to create an easement at the time of severance, that does not mean that the grantor had to form such intent consciously. Rather, "the circumstances must be such as to permit an inference that *had the grantor put his mind to the matter* he would have intended the servitude to be created." *Dressler et al v. Isaacs et al*, 217 Or 586, 597, 343 P2d 714 (1959)) (emphasis added). To make that determination, the court views the circumstances from the putative grantee's point of view: "We think that the proper adjustment of the conflicting claims of the parties in this type of case can be arrived at more directly by attempting to determine what a reasonable grantee would be justified in expecting as a part of his bargain when he purchases land under the particular circumstances." *Id.* at 599. Thus, the "essential question is whether a reasonable purchaser would be justified in expecting the easement under the circumstances in which he or she purchased the land." *Garrett v. Mueller*, 144 Or App 330, 341, 927 P2d 612 (1996), *rev den*, 324 Or 560 (1997); *see also German Savings & Loan Soc. v. Gordon*, 54 Or 147, 157, 102 P 736 (1909) (applying similar standard in case involving a mortgage holder and an implied quasi easement).

Determining whether an implied easement exists "is inherently factual and involves a weighing of numerous factors." *Bloomfield v. Weakland*, 193 Or App 784, 796, 92 P3d 749 (2004), *aff'd on other grounds*, 339 Or 504, 123 P3d 275 (2005). In *Cheney v. Mueller*, 259 Or 108, 118-19, 485 P2d 1218 (1971), the court identified eight nonexclusive factors that are "important" for courts to consider in deciding whether an implied easement exists: (1) whether the plaintiff is the conveyor or the conveyee; (2) the terms of the conveyance; (3) the consideration given; (4) whether the claim is made against a simultaneous conveyee; (5) the extent of necessity of the easement; (6) whether reciprocal benefits result to the conveyor and the conveyee; (7) the manner in which the land was used prior to its conveyance; and (8) the

extent to which the manner of prior use was or might have been known to the parties.

"Implied easements are disfavored and must be established by clear and convincing evidence." *Manusos*, 263 Or App at 724 (citing *Thompson v. Schuh*, 286 Or 201, 203, 593 P2d 1138 (1979)). "[A] person's land should not be burdened with an easement unless the intent to create it is clearly manifested or the circumstances are such as to clearly show that had the grantor considered the matter he would have intended an easement to burden his land." *Bloomfield*, 193 Or App at 796 (original brackets omitted).

B.   *Application to This Case*

Applying the foregoing principles, the dispositive question is whether a reasonable person in Fannie Mae's position would have been "justified in expecting" the easement, *Dressler*, 217 Or at 599, under the circumstances that existed in 2007 when Fannie Mae acquired its interest in Lot 100. *See German Savings & Loan*, 54 Or at 157 (deciding whether the plaintiff bank, who had acquired its own property by foreclosure, had an implied easement over the defendant's adjoining property, based on the circumstances that existed "at the time the mortgage was given").[4] More specifically, because the trial court ruled on summary judgment, the question is whether there is a genuine dispute of material fact on that issue and, if not, whether either party was entitled to judgment as a matter of law.

To answer that question, we consider the summary judgment record against the eight *Cheney* factors. (Although nonexclusive, the parties have not identified any additional factors for our consideration.) That analysis leads us to the conclude that, although it is a close case, the summary judgment evidence—which consisted solely of evidence submitted by plaintiff—was sufficient to establish as a matter of

---

[4] The case law is unequivocal that the relevant point in time is when severance occurred. At first blush, that would appear to be 2011 in this case—the year that Fannie Mae foreclosed on Lot 100 and became its owner, while defendants remained the owners of Lot 2400. Indeed, in the trial court, both parties focused their arguments on 2011. However, under *German Savings & Loan*, the correct year is 2007, and it makes no practical difference to the analysis, so we use the correct year.

law that plaintiff has an implied easement over a portion of defendants' property as "reasonably necessary for Plaintiff's access to the residence, garage, parking, and property storage located on Lot 100."

### 1. *Whether the claimant is the conveyor or the conveyee*

Generally, "the law will imply an easement in favor of a grantee more readily than in favor of a grantor." *Cheney*, 259 Or at 123. However, the rationale for that rule lies in the presumption that "the conveyor to a greater extent than the conveyee usually controls the language and circumstances of the conveyance." *Thompson*, 286 Or at 213. That presumption is ill-suited to a situation such as this one, in which Fannie Mae acquired its interest in Lot 100 as a mortgagor. Thus, although Fannie Mae is in the position of conveyee, we give no weight to this factor.

### 2. *Terms of the conveyance*

Nothing in the terms of the conveyance bears on our analysis.

### 3. *Consideration given*

"Where the claimant is the grantor, the fact that the grantee paid consideration for the land *** suggests that an implied easement over the grantee's land was not contemplated." *Thompson*, 286 Or at 214. Where the claimant is the grantor and the grantee did *not* pay consideration for the land, that fact may favor an easement. *Rose*, 188 Or at 36 (considering father's gift of land to son as relevant in deciding that they intended the road on the son's land to remain open to continued use by the father). Here, Fannie Mae was the grantee, not the grantor, and the consideration that it gave neither weighs against nor in favor of an implied easement, except insofar as Fannie Mae would have been justified in expecting to have reasonable enjoyment of Lot 100.

### 4. *Whether the claim is made against a simultaneous conveyee*

The parties have not addressed this factor, and it does not appear to be relevant here.

5.  *The extent of necessity of the easement to the claimant*

Plaintiff relies heavily on the necessity of the easement, and we agree that it is the factor that weighs most heavily in his favor. Indeed, absent reasonable necessity, plaintiff could not possibly prevail on his claim. *Cf. Thompson*, 286 Or at 214 (in which necessity was the "cornerstone" of the plaintiff's implied-easement claim).

Reasonable necessity is a line drawn somewhere between literal necessity and mere convenience, being driven by policy considerations, but ultimately being judged by "what a reasonable grantee would be justified in expecting as a part of his bargain when he purchases land under the particular circumstances." *Dressler*, 217 Or at 598-99. "[R]easonable necessity should not be grounded in mere convenience, but rather in the necessity appearing from the apparent purpose, the adaptability, and the known use to which the property is to be put." *Manusos*, 263 Or App at 733. "Parties to a conveyance may * * * be assumed to intend the continuance of uses known to them which are *in a considerable degree necessary to the continued usefulness of the land.*" *Cheney*, 259 Or at 121 (emphasis added).

The summary judgment record shows that it is difficult to drive safely into and out of Lot 100 without crossing the shared property line with Lot 2400. There is evidence that Highway 62 runs "quite a ways above the level of" Lot 2400 and that the driveway leading from Highway 62 down across Lot 100 to the house is "quite steep." Since defendants built their fence on the property line, plaintiff's son has had to reverse down the driveway to the garage area to park—because it is no longer possible to turn around at the bottom of the driveway and is impossible to back up the steep driveway and onto Highway 62. Relatedly, plaintiff's son "cannot leave [the] property at night because, without the aid of headlights to see behind [him], it is extremely dangerous to back down the driveway in the dark" when he returns. It is also generally "very difficult to accurately maneuver a vehicle in the limited space between the fence and the garage," and at least

one of the new fence posts has already been damaged by a vehicle.[5]

Plaintiff argues that that evidence establishes that there is an implied easement over part of Lot 2400 as is reasonably necessary to the enjoyment of Lot 100. Defendants counter that there is at least a genuine dispute of material fact regarding the reasonable necessity of the easement, because (1) the record shows that plaintiff can park two cars next to his house, even if he has to drive backwards to do so, and (2) Train's elderly nephew, who is familiar with both lots and used to visit regularly when Train was alive, testified that he could think of "no reason" for Train to have reserved an easement on Lot 2400 when he sold that lot to Bettis in 1984. *See King v. Warner Pacific College*, 296 Or App 155, 172, 437 P3d 1172 (2019) (the nonmovant may identify evidence "within [the movant's] evidence" that creates a dispute of material fact or may offer "his own contrary evidence" to create a dispute of material fact).

We agree with plaintiff that the summary judgment record establishes that an easement over a portion of Lot 2400 near the property line is reasonably necessary to the enjoyment of Lot 100, given the substantial difficulty attendant to using the driveway, turning around, and parking without crossing over the property line. Although those activities are not strictly impossible without crossing the property line, the undisputed evidence is that they are difficult to the point of causing substantial inconvenience and safety concerns to the occupants of Lot 100, including the inability to come and go from the property at night.[6] A reasonable purchaser of Lot 100 would be justified in expecting not to have to drive backwards to get to the parking

_____

[5] There is no evidence, and defendants do not argue, that any changes were made on Lot 100 between 2007 and 2017 that would be relevant to whether it is reasonably necessary to cross the property line to safely enter and exit Lot 100 in a vehicle.

[6] Train's nephew's testimony is insufficient to create a genuine dispute of material fact. Based on his testimony, he does not appear to have known the true location of the property line between the two lots, making his personal perception of the necessity of an easement in 1984 largely irrelevant. In any event, whatever the situation was in 1984, the question is reasonable necessity in 2007.

area for the house, particularly given the steepness of the driveway.[7]

    6.   *Whether reciprocal benefits result to the conveyor and the conveyee*

    Although the record is minimal on this point, there is some evidence in favor of an easement on this factor, in that it is reasonable to infer from the record that defendants have their own implied easement across Lot 100 to access Lot 2400. Train's nephew referred to the fact that the driveway that comes off the highway onto Lot 100 serves both lots, and defendants acknowledged as much to the trial court, representing that, "[f]actually speaking, both lots access off of the highway through the driveway on Lot 100." The fact that the property was divided in such a way that the owners of Lot 2400 depend on use of a portion of Lot 100 for ingress and egress to their own property makes it more likely that the owners of Lot 100 would expect to be able to use a portion of Lot 2400 if necessary for safe ingress and egress to Lot 100.

    7.   *The manner in which the land was used prior to its conveyance*

    Prior use of land may be relevant to the existence of an implied easement, at least when coupled with knowledge and some degree of necessity. *Cheney*, 259 Or at 123 ("Parties to a conveyance may *** be assumed to intend the continuance of uses known to them which are in a considerable degree necessary to the continued usefulness of the land."). Although "evidence of prior use cannot of itself establish an easement, *** in some cases, prior use is the most compelling evidence that the parties intended to create an easement." *Dayton v. Jordan*, 280 Or App 236, 242, 381 P3d 1041 (2016) (internal quotation marks omitted); *see, e.g.*, *Garrett*, 144 Or App at 341-42 (upholding implied easement for water access, largely because servient estate had openly provided water to dominant estate for 50 years).

---

[7] Regarding reasonable necessity, we do *not* consider any "need" for the occupants of the house on Lot 100 to access a carport, because the only carport that existed on the property was built in 2014, many years after the easement would have been created.

In this case, plaintiff relies fairly heavily on evidence of prior use, but we do not consider the prior-use evidence to be a significant factor in the analysis.

The summary judgment record contains evidence that, while Train lived on Lot 100, he used the disputed area of Lot 2400 for various purposes, especially parking a recreational vehicle and other vehicles. Given that Lot 2400 is a vacant lot that Train either owned or had an express easement to use for the entire time that he lived on Lot 100, we do not view that evidence as particularly meaningful to Fannie Mae's justified expectations for an implied easement in 2007.[8]

Similarly, plaintiff points to a wire fence that someone built on Lot 2400 around 2003, as well as a line of railroad ties that runs along the edge of the river embankment for 25 to 30 feet from the shared property line to two large pine trees on Lot 2400, as evidence that the "residents of the house" on Lot 100 have used the parking area on Lot 2400 continuously since 1976. There are certainly circumstances in which a fence may be relevant to whether an implied easement exists. *See German Savings & Loan*, 54 Or at 157 (holding that the plaintiff had an implied easement to use a private passageway on his neighbor's land that was defined by a fence and gate). However, here, it is unknown who built the wire fence in 2003, what its purpose was, or even how permanent it looked. It is also unknown when the railroad ties were placed or who placed them, although, according to Train's nephew, they were present when Train owned the property.

---

[8]  We note that the express easement created in 1984 ceased to exist in 2005, by operation of the merger doctrine, when the Richmonds became the owners of both lots. *See Witt v. Reavis*, 284 Or 503, 507, 587 P2d 1005 (1978) ("'An easement is ordinarily extinguished if one person acquires an estate in fee simple in possession in both the dominant and servient tenements. By reason of the perpetual right of possession of the tenement which was previously subject to the easement, such person and his heirs can make any use whatsoever thereof, and the inferior right of easement, its utility having thus disappeared, is swallowed up in the superior right of possession.'" (Quoting 3 *Tiffany, Real Property*, § 822, 377 (3d ed 1939).); *Dressler*, 217 Or at 591 ("The union of the dominant and servient estates in [one person] would, of course, destroy the easement."); *Restatement (Third) of Property: Servitudes* § 7.5 (2000) (recognizing merger doctrine).

Further, plaintiff does not explain how the presence of a parking area on Lot 2400 allows an inference of continuous use by *the residents of the house on Lot 100*. To the extent that the fence and railroad ties suggest a designated parking area, there would be no reason for someone in Fannie Mae's position to assume that a parking area located on Lot 2400 was for the benefit of Lot 100, except to the extent that the two lots were under common ownership or there had been a past misunderstanding about the location of the property line. We are unaware of any precedent for implying a "parking" easement on someone else's property—a neighbor's use of property that interferes with the owner's own use would be more in the nature of adverse possession. *See Craft v. Weakland*, 174 Or App 185, 189, 23 P3d 413 (2001) ("An easement holder can make only such use of an easement as is reasonably necessary to accomplish the purpose for which the easement is granted and the remaining dominion over the land upon which the easement lies continues with the servient landowner." (Emphasis and brackets omitted.)).

The evidence of prior use in the record is of little or no relevance to what a reasonable person in Fannie Mae's position would have been justified in expecting in 2007 in terms of an implied easement.

8. *The extent to which the manner of prior use was or might have been known to the parties*

There is no evidence that Fannie Mae or defendants knew or might have known how Train used Lot 2400 while he lived on Lot 100. There is no evidence that Fannie Mae or defendants knew or might have known anything about the origin of the wire fence on Lot 2400 or the railroad ties on Lot 2400.

C. *Conclusion*

Having considered the *Cheney* factors individually and together, we conclude that the undisputed evidence was sufficient to establish that plaintiff has an implied easement over a portion of defendants' property as "reasonably necessary for Plaintiff's access to the residence, garage, parking, and property storage located on Lot 100." Accordingly, the trial court did not err in granting summary judgment for

plaintiff and denying summary judgment to defendants on the implied-easement claim.

In so holding, we express no opinion regarding the *scope* of the easement, as that issue is not before us. That is, both parties have approached the easement as an all-or-nothing proposition, and defendants have never argued in the trial court or on appeal that, even if plaintiff has an implied easement, he does not have an implied easement that is 30' wide and encompasses what defendants describe as a "third" of their property. Because that issue is neither preserved nor presented on appeal, we do not consider it and mention it only to avoid any misinterpretation of this opinion.

## IV.   INTERFERENCE

Defendants' sole argument as to why the trial court erred in granting summary judgment to plaintiff on plaintiff's interference claim is that the trial court erred in ruling that plaintiff has an implied easement. That is, if plaintiff has no easement, defendants cannot interfere with his easement. Given our conclusion that the trial court did not err in granting summary judgment to plaintiff on the implied-easement claim, it follows that the court did not err in granting summary judgment to plaintiff on the interference claim.

Affirmed.

APPENDIX



